[No. 2515]

GEORGE F. SMITH, AS ADMINISTRATOR OF THE ESTATE OF ALONZO CARLTON WEBB, DECEASED, RESPONDENT, *v.* THE ODD FELLOWS BUILDING ASSOCIATION (A CORPORATION), APPELLANT.

[205 Pac. 796]

1. APPEAL AND ERROR—ERRORS NOT URGED IN BRIEF ARE PRESUMED TO BE ABANDONED.
   Errors which were assigned, but not urged in appellant's brief, are presumed to have been abandoned.

2. CARRIERS—EVIDENCE HELD TO SUSTAIN VERDICT FINDING NEGLIGENCE IN CONSTRUCTION OF ELEVATOR SHAFT.
   Evidence that an elevator shaft was constructed with the casings of the doors at each floor projecting into the shaft, leaving no clearance between them and the cage where it was open, as the result of which a passenger's foot was caught between the floor of the cage and the projection and crushed, *held* to justify inference of negligence of the owner of the building.

3. CARRIERS—OWNER OF BUILDING OPERATING PASSENGER ELEVATOR IS COMMON CARRIER OF PASSENGERS OWING DUTY TO USE UTMOST CARE AND DILIGENCE.
   The owner of a building operating therein passenger elevators is a common carrier of passengers, and as such, in the maintenance, inspection, and operation of its elevator and elevator shaft, owes the duty to use the utmost care and diligence for the safety of its passengers.

Points decided

4. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE FOR JURY.

When the question of contributory negligence arises upon a state of facts in regard to which reasonable men might honestly differ, it is a question for the jury.

5. CARRIERS—EVIDENCE HELD NOT TO SHOW CONCLUSIVELY CONTRIBUTORY NEGLIGENCE OF ELEVATOR PASSENGER.

Evidence *held* not to show as a matter of law that a passenger in an elevator was contributorily negligent in permitting his foot to project beyond the floor of the cage so as to be crushed between the floor and a projection into the shaft.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE AFFIRMATIVE DEFENSE.

Contributory negligence is an affirmative defense which must ordinarily be specially pleaded and proved by a preponderance of the evidence.

7. EVIDENCE—MORTALITY TABLES INSERTED IN REVISED LAWS, ARE COMPETENT EVIDENCE OF LIFE EXPECTANCY.

In an action for death caused by defendant's negligence, where the expectancy of life of decedent was material as bearing upon the amount of damages, the American Table of Mortality, published as an appendix to the Revised Laws, is competent evidence; its insertion in the Revised Laws being a sufficient warrant of its authenticity.

8. EVIDENCE—FACT THAT DECEDENT WAS NOT INSURABLE RISK DOES NOT RENDER MORTALITY TABLES INADMISSIBLE.

The fact that decedent at the time he was injured. was suffering from diseases which shortened his expectancy of life and made him a noninsurable risk affects only the weight, and not the competency, of the American Table of Mortality as evidence of his life expectancy.

9. DEATH—ALLEGATION OF DAMAGES HELD SUFFICIENT.

In a complaint by the administrator for death caused by negligence, which alleged that decedent left surviving him a widow and three children, two of which were minors, an allegation that the estate was damaged by his death was equivalent to a general allegation of damage and could not have misled defendant, which was presumed to know that the measure of damages would be based upon pecuniary loss to the kindred named in the complaint.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran*, Judge.

Action by George F. Smith, as administrator of the estate of Alonzo Carlton Webb, deceased, against the Odd Fellows Building Association. Judgment for plaintiff, and defendant appeals. **Affirmed. Petition for rehearing denied.**

*Frederick L. Berry,* for Appellant:

The deceased was guilty of contributory negligence as a matter of law and fact. The law imposes upon a person sui juris the obligation to use ordinary care for his own protection, the degree of which is commensurate with the danger to be avoided. Carroll v. Electric Co., 84 Pac. 389; Dufour v. C. P. R. R. Co., 7 Pac. 769; Patne v. Oakland T. Co., 113 Pac. 1074. Ordinarily, negligence is a question of fact, but where undisputed evidence is such that only one inference can be drawn, it is one of law. Jacobson v. N. W. P. Ry. Co., 166 Pac. 3; Shortino v. S. L. & U. R. Co., 174 Pac. 860; Murray v. S. P. Co., 169 Pac. 675; Steggell v. R. R. Co., 167 Pac. 237; Williams v. Pacific E. R. Co., 170 Pac. 423; Fildew v. S. & N. W. Co., 177 Pac. 866; Lynch v. Pacific E. R. Co., 164 Pac. 20. "The only danger from the operation of this elevator, which the evidence disclosed, was that of impact between the passenger and the closed door or side of the shaft while the car was moving. The danger was obvious to a person of ordinary discretion and intelligence. No one but a child of tender years could fail to know and appreciate the risk of such a contact, or could fail to be guilty of contributory negligence if he permitted himself to suffer from it." Shallaberger v. Fisher, 5 L. R. A. 250. One riding on an elevator as a passenger must exercise ordinary care for his own safety. Ilardi v. C. T. T. Co., 172 Pac. 763.

Under the law of Nevada, no recovery can be had herein for damage to the estate of deceased, because this is an action created by statute, conferring upon heirs and dependents as individuals a right of action for pecuniary damage suffered by them. The estate of the deceased was not interested. "The jury in every such case may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting from such death to the kindred as herein named." Rev.

Laws, 5648.  Christensen v. Floriston P. & P. Co., 29 Nev. 552.  "Only such damages can be recovered as the statute authorizes; and in the absence of an express provision authorizing a different rule, the only damage allowed is the probable value of the life to those in whose behalf the action is brought."  Lange v. Schoettler, 115 Cal. 388.

"It is settled that the action authorized by this section is one solely for the benefit of the heirs by which they may be compensated for the pecuniary loss suffered by them by reason of the loss of their relative.  The money recovered constitutes no part of the estate of the deceased; and where the action is brought or the money recovered by the personal representative of the deceased, such personal representative is acting solely as a trustee of the beneficiaries or the heirs on account of whom the recovery is had."  In Re Riccomi's Estate, 197 Pac. 97;  Salmon v. Rathjens, 152 Cal. 294;  Simoneau v. Pacific Co., 159 Cal. 494;  Robinson v. U. S. Gas & Elec. Co., 194 Pac. 42;  Ruiz v. Santa Barbara Co., 164 Cal. 188;  Webster v. Norwegian M. Co., 137 Cal. 399.  The estate of the deceased has no interest or claim, but the heirs have a right which inheres in them as individuals.  So far as the estate of the deceased is concerned, the action abated upon his death; his estate acquired no interest or right to commence an action for the benefit of the estate.  Tann v. W. P. Ry. Co., 178 Pac. 971;  Bank v. Arcata & M. R. Co., 125 Cal. 364;  Munro v. R. R. Co., 84 Cal. 515;  Railway Co. v. Morris, 26 Ill. 400;  Marx v. Reisenger, 169 Pac. 247;  Early v. Pacific E. Ry. Co., 167 Pac. 513;  Slaughter v. Goldberg, Bowen & Co., 147 Pac. 92.

The experience tables of mortality are inadmissible as evidence tending to establish probable duration of life where the individual was at the time of the accident shown to have been afflicted with a definite chronic disease of several years standing, or in any class of uninsurable risks.  They were irrelevant, incompetent,

and immaterial in the case, and had no application thereto, being intended only to serve as a guide of the probable duration of life under normal conditions.

*Sardis Summerfield* and *Leroy Pike,* for Respondent:

This court will not consider assignments of error not urged in appellant's brief, they being presumptively abandoned or waived. Candler v. Ditch Co., 28 Nev. 164; Gardner v. Gardner, 23 Nev. 213; Allison v. Hagan, 12 Nev. 42.

The common law did not authorize damage suits because of death from wrongful act, and in all the states they are sanctioned only by express statutes. The right of action for the negligent killing of a person is an asset of the estate and warrants the appointment of an administrator. Peers v. Nevada P., L. & W. Co., 119 Fed. 400; Christensen v. Floriston Co., 29 Nev. 552; Forrester v. S. P. Co., 36 Nev. 247; 1 L. R. A. (N.S.) 885.

It being stare decisis in Nevada that the right of action for the negligent killing of a person is an asset of the estate, the resultants become a part of decedent's estate until distributed as provided by law. It is no concern of appellant to whom the damages are distributed. Satisfaction of the judgment would be a complete bar to any other action in any other court upon the same subject-matter. Forrester v. S. P. Co., supra.

The measure of damages is the loss to the heirs, and courts must follow their own statutes in regard thereto. The words "personal representative" mean "administrators" or "executors." Tiffany, Death by Wrongful Act, par. 109.

Standard mortality tables are admissible in death actions for damages. Such is the general rule. Tiffany, supra, sec. 174; Rev. Laws, p. 2114. Such tables are not conclusive, but are, under the authorities, admissible in evidence and properly considered in connection

with all the other evidence in computing the probable expectancy of life.

"The jury in every such action may give such damages, pecuniary and exemplary, as they shall deem fair and just, and may take into consideration the pecuniary injury resulting to the kindred as herein named." Rev. Laws, 5648. Other courts sustain the rule. McIntyre v. New York Co., 37 N. Y. 287; Dickens v. N. Y. C. Co., 1 Abb. Dec. 504; Annas v. Milwaukee Co., 30 N. W. 282; McKeigue v. Jamesville, 31 N. W. 298.

The law exacts a very high degree of care and prudence in the operation of passenger elevators; not less than that required in the operation of railway passenger trains. "The law is also well established that a railroad acting in the capacity of a common carrier of passengers is bound to use the utmost care and diligence for the safety of the passengers, and is liable for any injury to a passenger occasioned by the slightest negligence against which human prudence and foresight should have guided." Murphy v. S. P. Co., 31 Nev. 125; Webb on Elevators, 2d ed., sec. 7. "However, although there are no cases upon the point, it seems that reason favors the exacting of greater caution on the part of those who carry vertically, since they incur the great danger of opposing the inexorable law of gravitation." Idem, p. 3.

By the Court, DUCKER, J.:

This action was instituted by the respondent as administrator of the estate of Alonzo Carlton Webb, deceased, to recover damages for the death of deceased, alleged to have been caused by the negligence of the appellant. The action was tried before a jury and verdict rendered for the respondent for the sum of $8,500. From the judgment entered in accordance with the verdict and the order denying a motion for a new trial, this appeal is taken.

The accident in which the deceased sustained the

injuries which resulted in his death happened in an elevator owned and operated by appellant in the Odd Fellows Building in the city of Reno, Nevada, on the 14th day of February, 1921. The deceased was a mail-carrier, and on that day, and for a long time prior thereto, his duties required him to deliver mail to the occupants of the building and to collect outgoing mail. The elevator was an electric passenger elevator with two doors or openings, and was operated by an employee of the appellant. On the morning of the 14th of February, 1921, the said Webb entered the elevator on the ground floor for the purpose of entering the building on his usual rounds in delivering and collecting mail. On the ascent of the elevator his left foot was caught between the floor of the elevator and a projection on the south side of the elevator shaft beneath the second floor of the building. The foot was crushed to such an extent that amputation of a portion of the foot became necessary, and on the following day death ensued from the effect of the injury and shock.

1. Forty-four errors are assigned, a number of which are not urged in appellant's briefs. The latter must be presumed to have been abandoned. We have considered and determined adversely to appellant all of the errors urged in its briefs, but will discuss only those which appear to be the most important.

2. Appellant's negligence is foreclosed by the verdict of the jury, at least as to the faulty construction of the elevator shaft by means of which Webb's foot was caught and crushed. Counsel for appellant practically conceded this on the oral argument, and we do not perceive how, under the evidence, he could have assumed any other position. The evidence is undisputed that on the south side of the elevator shaft, the side on which the accident happened, there was a horizontal square-edge wooden casing from four to five inches in width just below the floor level of the second floor. The casing projected into the elevator shaft at least seven-eighths of an inch. According to some of the witnesses, it projected into the shaft for a distance

of 1½ inches. The same condition existed beneath all of the upper floor levels. The clearance between the edge of the elevator and the projection is given by one witness as one-half of an inch. Another witness testified that there were 1½ inches of clearance. The elevator had no door to enclose it. So, accepting any of the distances given as correct, it is obvious that the projection beneath the floor landings made a condition of danger to one ascending in the elevator whose foot or arm or clothing might protrude over the edge of the elevator floor. That this dangerous construction could have been easily obviated by making the door casings flush with the wall of the shaft, or by placing bevel boards beneath the horizontal part of the projections so that an object extending over the floor of the elevator would be pushed back into the elevator when it came in contact with the bevel board, appears from the testimony.

3.   On this phase of the case the court instructed as follows:

"The jury is instructed that at the time the decedent, A. C. Webb, sustained the injury described in plaintiff's complaint, defendant was a common carrier of passengers and as such in the maintenance and inspection of its elevator and elevator shaft and in its operation of said elevator at said time was bound to use the utmost care and diligence for the safety of its passengers therein, and was and is liable for any injury to a passenger occasioned by its slightest negligence, against which human prudence and foresight should have guarded.

"The jury is instructed that a passenger elevator is a dangerous instrumentality unless properly constructed and managed, and that there is no employment where the law demands a higher degree of care and diligence than in the construction and operation of such elevators.

"The jury is instructed that the operator of a passenger elevator is bound to avail himself of such new inventions and improvements known to him, which will

contribute materially to the safety of his passengers whenever the ability of such improvements has been thoroughly tested and demonstrated, and their adoption is within his power, so as to be reasonably practicable.

"Applying this rule of law to the case, the jury is further instructed that if it believes from all the evidence in the case that defendant knew, or reasonably should have known, before the alleged injury to Alonzo C. Webb, that the square-edged horizontal projection immediately below each floor level in the elevator shaft, if such condition then existed, should be so beveled as to materially guard the safety of the feet of passengers therein, and having time and failing so to do, and such failure being the proximate cause of the alleged injury to said A. C. Webb, then, the jury so believing, it should find in favor of plaintiff upon such issue."

These instructions were not objected to, and they correctly declare the law applicable to the facts established by the testimony. 9 R. C. L. 1237, 1238; Webb on Elevators (2d ed.) pp. 4–7, and cases cited; Treadwell v. Whittier, 80 Cal. 574, 22 Pac. 266, 5 L. R. A. 498, 13 Am. St. Rep. 175. The jury were justified under the instructions of the court in inferring negligence on the part of the appellant, and their verdict cannot be disturbed on this ground.

4. Appellant contends that respondent's intestate was guilty of contributory negligence which was the proximate cause of his injuries, and that the trial court erred in denying its motion for a nonsuit on this ground. Whenever the question of contributory negligence arises "upon a state of facts in regard to which reasonable men might honestly differ," it ought to "be submitted to the jury." Solen v. V. & T. R. R. Co., 13 Nev. 106; Bunting v. Central Pacific Railroad Co., 14 Nev. 351; Weck v. Traction Co., 38 Nev. 285, 149 Pac. 65; Crosman v. Southern Pacific Co., 44 Nev. 286, 194 Pac. 839.

In Konig v. N. C. O. Ry., 36 Nev. 209, 135 Pac. 151, this court said:

"It is only where the plaintiff's case conclusively discloses negligence on his part that such disclosure may be taken advantage of by defendant in authorizing the court to advise a verdict for him. If, however, the evidence only tends to show, or only raises an inference of, contributory negligence, the question should properly go to the jury to be determined like any other question of fact. The mere suspicion of negligence arising from the plaintiff's case will not warrant the court in taking such action. On the contrary, the inference of negligence on the part of the plaintiff must be so strong as to be unavoidable and conclusive. Where some evidence disclosed during the plaintiff's case merely tends toward the conclusion of contributory negligence, but lacks that cogency to make it conclusive, then it merely raises a question for the jury and should be submitted to the jury."

5, 6. The only fact established by the evidence from which an inference of contributory negligence can be drawn is that the injured man's foot extended over the edge of the floor of the elevator. How it came to be in that position does not appear from respondent's evidence, nor is it shown by appellant's evidence. The operator was the only person in the car besides Webb at the time the accident happened. When Webb entered the elevator and took a position about two feet from the south side of the elevator, the operator went to the control box and started and was operating the car. His back was turned towards Webb, and he did not see him again until his attention was attracted by the injured man's screams. Mr. Worron, a witness for respondent, gave testimony to the effect that Webb was seated in a chair in the elevator when his foot was caught. He testified, in substance, that he was on the second floor near the elevator shaft when his attention was directed to the elevator by the cries of the injured man; that the elevator was then about on a level with the second floor; that the elevator went on up out of sight and directly returned to the second floor, where

the injured man was taken from the elevator; that Webb was seated on a chair or stool on the south side of the elevator about two feet from the opening in the elevator when the attention of the witness was first directed to it, and was seated in the same position with his left foot outside of the elevator when it returned to the second floor. The testimony of this witness as to the elevator going to the third floor and beyond and as to Webb being seated in a chair in the elevator when he sustained his injuries, is in conflict with the testimony of the operator in this regard, and, of course, presented a question for the jury. But the point we wish to emphasize is that it does not affirmatively appear from the evidence that Webb's carelessness contributed to his injuries. The fact that a portion of his foot extended over the edge of the elevator floor is not incompatible with respondent's claim that he was exercising ordinary care at the time of the accident. It is merely susceptible as an inference of carelessness. There is no direct evidence on this point. And in this connection it must be remembered that contributory negligence is an affirmative defense which must ordinarily be specially pleaded and proved by a preponderance of the evidence. The jury, therefore, had a right to consider all the circumstances bearing upon the question in the light of the rule as to the burden of proof.

Appellant cites Beidler v. Branshaw, 200 Ill. 425, 65 N. E. 1086, as a case in point favorable to its contentions. This case is somewhat similar to the present case. In this case the injured man's heel was caught between the floor of the elevator and an iron lintel in the shaft. In the course of his employment during the year prior to the injury, he had worked for a considerable portion of the time loading and unloading materials near the door which opened into the elevator and above which the lintel projected into the shaft. He had passed up and down upon the elevator repeatedly during that time. By reason of these facts it was assumed

in the prevailing opinion · that he was aware of the dangerous construction and fully appreciated consequences to himself if any part of his body should project over the north edge of the car. We cannot apply this reasoning in the present case and say that Webb, on account of his frequent use of the elevator, knew of the slight projections which extended into the shaft and that they were not supplied with safety devices ·for the protection of passengers. We cannot say that these things should have been observed and the danger appreciated by one following the occupation of a mail-carrier and doubtless unacquainted with the construction of elevator shafts. Besides, in considering the value of Beidler v. Branshaw as an authority, it must not be overlooked that it is the rule in Illinois, in an action of this kind, that the burden of proof is on the plaintiff to prove that his intestate was not guilty of contributory negligence. Blanchard v. Lake Shore R. Co., 126 Ill. 416, 18 N. E. 799, 9 Am. St. Rep. 630. Moreover, two of the justices dissented in that case and declared the question presented by the evidence to be one of fact for the jury, and not of law for the court. We are in accord with this view, and for all of the reasons given cannot regard the case as an authority to be followed.

Quimby v. Bee Building Co., 87 Neb. 193, 127 N. W. 118, 138 Am. St. Rep. 483, is cited and discussed by appellant. In this case a boy of 12 years of age got his foot caught between the floor of the elevator and a floor landing that projected into the shaft and was injured. A verdict finding the defendant guilty of negligence was affirmed on the ground that it had not properly warned and safeguarded the boy while a passenger in his elevator, regardless of the question of whether or not there was negligence in its construction. It is argued that the language of the decision indicates that if the boy had been a person of mature years, he would have been held guilty of contributory negligence. Be that as it may, the case does not formulate any rule

favorable to appellant. It is not what is said or intimated in an opinion but what is decided that is of importance. We are of the opinion that the question whether the deceased exercised ordinary care was for the jury to decide, and we see no good reason to hold that the verdict is contrary to the evidence.

7. The appellant insists that the court erred in admitting in evidence the American Table of Mortality published in Appendix B at page 2114, vol. 2, of the Revised Laws of Nevada. The table was offered to prove Webb's expectation of life. The insertion of the table in the volume containing the Revised Laws by the compilers is a sufficient warrant for its authenticity. The injured man's expectancy of life was material as bearing upon the amount of damages sustained, and we see no error in the admission of the table in evidence. As stated in 19 R. C. L., p. 216:

"Mortality tables consist of summarized statistical information on a matter of general interest. They are, therefore, impartial and disinterested, and are so nearly in the nature of exact science or mathematical demonstration as to be credible and valuable. Consequently the uniform practice of the courts is to receive them in evidence in cases where such evidence is applicable. While they are not conclusive, and are far from satisfactory evidence, they are admitted from necessity, because they are the best guide obtainable to the establishment of a material but necessarily uncertain fact, the natural duration of the individual life."

8. The specific objection, however, is that the mortality table was inapplicable in this case, as the evidence showed that for several years prior to his death Webb had been afflicted with tuberculosis and arteriosclerosis. It is urged that Webb was therefore not an insurable risk, and that, as the American Table of Mortality is based on insurable lives of healthy persons, it could have no tendency to prove his expectancy of life, and its admission in evidence must have had some influence on the extent of the verdict. The following statement

found in 19 R. C. L., p. 217, formulates the correct
rule:

"While the probative effect of mortality tables may
be impaired or destroyed, they are not rendered inad-
missible by evidence of disease or ill health on the part
of the person to whom they are applied, or that he was
engaged in a hazardous employment, or that he was
not an insurable risk."

See, also, 17 C. J. 1355, 1356.

In Broz v. Omaha Maternity and General Hospital
Assn., 96 Neb. 648, 148 N. W. 575, L. R. A. 1915D, 334,
which was an action for damages for death resulting
from negligence, on the question of the admissibility
of mortality tables where it was conceded that the
deceased had been suffering from a mental disorder of
such nature that he could never fully recover and his
chances of a partial recovery were none too good, the
court said:

"Proof that the person whose expectancy of life is
under consideration conforms to the standards of health
and vigor adopted in compiling mortality tables is not
essential to their admissibility. Evidence of disease or
of ill health or of hazardous employment may impair
or destroy the probative effect of tables of expectancy
of life, but does not make them inadmissible."

The court cites a line of cases in support of the rule
announced. In Arkansas Midland R. Co. v. Griffith, 63
Ark. 491, 39 S. W. 550, cited on this point, the court
said:

"The question is whether we can still make the tables
of service in making the calculation, notwithstanding it
is shown that plaintiff's condition and health were below
the average, and that, in fact, he was not an insurable
risk. This is an element of uncertainty that must
necessarily be found in the case of one of feeble health
and not insurable, in all cases, whether we call to our
aid the mortality tables or not. When we do so, how-
ever, when, by reason of enfeebled physical condition,
the standard tables are not strictly applicable on that

account, yet they are more or less efficient aids in arriving at an approximation of the truth, and that is the best that can be hoped for after all."

On the same point, the court, in Deer v. Suckow Co., 60 Ind. App. 277, 110 N. E. 700, said:

"The fact that one is shown to be in poor health does not affect the admissibility of the tables, but goes merely to its force and weight."

To the same effect is Greer v. Louisville R. R. Co., 94 Ky. 169, 21 S. W. 649, 42 Am. St. Rep. 345. In fact, the consensus of judicial opinion on the subject is that evidence of disease or ill health does not render mortality tables incompetent as evidence tending to show expectancy of life, but goes only to its weight. We are of the opinion that there was no error in the admission of the tables in evidence. It is unnecessary to discuss any of the other objections raised by appellant to the admission or rejection of evidence. We are satisfied that there was no error committed in these respects, at least of a prejudicial nature.

9. Appellant contends that the action contemplated by the statute is one which is created for the benefit of the persons designated therein, and is not an action wherein the estate can be damaged; and that, as the only damage alleged in the complaint is damage to the estate, the demurrers and motions thereto should have been sustained. The objection is technical. The statute gives the right of action to the personal representative of the individual injured, and was therefore properly brought by the respondent as administrator of the estate of the deceased. Had the damage been alleged to have been sustained by the plaintiff as administrator instead of by the estate, the averment would not have been objectionable, and the difference does not go to the substance of the allegation. The former was the form of the allegation in Peers v. Nevada Power, Light and Water Co. (C. C.) 119 Fed. 400, a case arising in this state and prosecuted under the statute involved here. Judge Hawley, who wrote the opinion, considered the

objections urged against the allegation to be without
merit. On this point the court said:

"The objections urged against the fifteenth averment
in the complaint, that plaintiff, as administrator of the
estate of Wells, 'hath sustained damages,' are untenable.
They are purely technical, and apply only to the form
and not the substance of the averment. The death of
Wells did not damage J. V. Peers individually, and there
is no claim that it did. The action is not brought by him
individually, but in his representative capacity as
administrator of the Wells estate. Under the express
provisions of the statute, the action must be brought
by the representative of the deceased, and he alone is
entitled to recover damages, if any, resulting from the
death of Wells by the wrongful act of the defendant—
not for his own individual benefit, but for the benefit
of those to whom the damages recovered are to be dis-
tributed as provided for in the second section of the
act. The averment in question follows approved forms
in such cases (1 Estee, Pl. sec. 1841), and must be con-
strued as having precisely the same meaning as if the
words 'hath sustained damages' had been left out, and
in lieu thereof the words, 'brings this action to recover
from defendant $40,000 damages for the death of the
deceased.' "

A general allegation of damages is sufficient in an
action of this kind. The statute under which this action
was prosecuted is in derogation of the common law, at
which an action for damages for the death of a person
by wrongful act was not maintainable. The first statute
to authorize an action of this kind was the English Act
of 1841 (9–10 Vict., c. 93), commonly known as Lord
Campbell's Act, and as pointed out by Judge Hawley
in Peers v. Nevada Power, Light and Water Co., supra,
has served as a model upon which most of the statutes
of the various states of the Union have been enacted.
In the first case in England in which the point as to a
proper averment of damages was raised, it was held
that special allegation of damages was unnecessary.

Chapman v. Rothwell, El. Bl. & El. Q. B. 168. In respect to damages the declaration alleged: "And the plaintiff as administrator as aforesaid claims £200."

It is interesting to note that Lord Campbell, the author of the act, was chief justice when this decision was rendered. In this country the decided weight of authority sustains the rule that a general allegation of damage is sufficient in an action of this kind. Peers v. Nevada Power, Light and Water Co., supra; Korrady v. Ry. Co., 131 Ind. 261, 29 N. E. 1069; Haug v. Great Northern Ry. Co., 8 N. D. 23, 77 N. W. 97, 42 L. R. A. 664, 73 Am. St. Rep. 727; Peters v. Southern Pacific Co., 160 Cal. 48–67, 116 Pac. 400; 17 C. J. 1292. The allegation in the complaint before us amounts to a general allegation of damages and is in our opinion sufficient. The appellant was sufficiently advised by the complaint as to what it would have to meet on the question of damages. The complaint alleged the death of respondent's intestate occasioned by the negligence of the appellant, and that he left surviving him a widow and three children, two of which are minors, and that, by reason of such negligence resulting in the infliction of injury and death upon the intestate, his estate hath suffered damage. Appellant knew, or was presumed to know, that the measure of damages would be based upon the pecuniary loss to the kindred named in the complaint, and could not, therefore, have been misled by the allegation of damages to the estate.

There is nothing in Christensen v. Floriston Pulp and Paper Co., 29 Nev. 552, 92 Pac. 210, cited and discussed by appellant, that is opposed to the views we have expressed. No question of pleading was involved in that case. The language of the court quoted by appellant dealt merely with the measure of damages. The California cases cited are not in point.

The judgment is affirmed.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.