ENGLEMAN *v.* ROYAL INSURANCE COMPANY, LIMITED, OF LIVERPOOL, ENGLAND

No. 3102

November 5, 1935.                    51 P. (2d) 417.

*Harold M. Morse* and *C. D. Breeze,* for Appellant:

*Thornton, Menzies & Penney* and *Henderson & Marshall,* for Respondent:

## OPINION

By the Court, DUCKER, C. J.:

This is an action on an insurance policy, brought by the plaintiff as assignee of the insured, to recover the sum of $2,000 damages caused by fire. The property insured, certain goods, wares, and merchandise, consisted chiefly of pawnbroker's stock, business furniture, fixtures, and equipment, situated in a certain building in the city of Las Vegas. The fire occurred January 16, 1933, and it is alleged that said personal property described in the policy of insurance was destroyed. Compliance by the insured subsequent to the fire with each and every condition on his part to be performed, as provided for in the policy, is alleged.

The defense is based on several clauses of the policy. The court found in favor thereof and rendered judgment for defendant. This appeal is from the judgment and order denying a new trial.

The first clause of the policy involved, so far as its terms are material here, reads: "If fire occur the insured shall give immediate notice of any loss thereby in writing to this company; protect the property from further damage, forthwith separate the damaged and undamaged personal property, put it in the best possible order; make a complete inventory of the same,

stating the quantity and cost of each article and the amount claimed thereon; and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all other insurance, whether valid or not, covering any of said property. * * * "

The second and third clauses involved, read:

"This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisals have been required."

"No suit or action on this policy for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within 12 months after the fire."

The main question presented for determination is whether the judgment finds support in the evidence. Plaintiff contends that it does not (1) because full compliance with the terms and conditions of the policy was shown, and (2) because of waiver on the part of the defendant.

We are satisfied that the evidence, under the applicable rules of law, justified the trial court in finding for the defendant.

Seven days after the fire the insured executed a written assignment of the policy and his interest in all sums of money due him, or to become due him, from the defendant to plaintiff Engleman. On the

13th of March, 1933, plaintiff rendered to the defendant a written statement sworn to by him purporting to be a proof of loss. No proof of loss was ever made by insured, which, as noted, is required by a clause of the policy. Where the requirement in the policy is that insured furnish proofs of loss, he must comply therewith in order to recover on the policy. This is the rule in general, subject to a number of exceptions. It is stated in 26 C. J. 367: "However, it is a usual requirement of the policy that insured give notice and furnish proofs of loss, and compliance therewith is necessary to enable him to recover on the policy, unless the insurer has waived or become estopped to assert the condition, or unless the circumstances are such as to excuse insured's noncompliance therewith."

In McGraw v. Germania Fire Ins. Co., 54 Mich. 145, 19 N. W. 927, 931, a leading case, the rule and some of its exceptions are thus stated:

"Under the policy in question, proofs of loss required by its terms is a condition precedent to a right of recovery; and in general they are to be signed and sworn to by the assured in person. But the clause in question is subject to exceptions; as where the owner is a nonresident, dead, or was insane or absent at the time when the loss occurred, and did not return in season to make the proofs, or that he did not possess the necessary information in reference to the matters required to be stated to make proofs, or that the objection as to their being made by the wrong person has been waived. See Wood, Ins., sec. 413. But where the assured can himself make the necessary proofs he should do so, or give a sufficient excuse for his failure; and ordinarily (though this is not essential) the reasons why the proofs were not made by the assured should be stated in the proofs of loss."

"As a general rule, subject to the exceptions hereafter noted, the proofs of loss should be furnished by the original insured, where the policy so required. The contract of insurance is made with him, and where the company issues to a person a policy which stipulates

that the insured shall, in case of loss, make affidavit of that loss and of certain facts concerning it, the company has the right to insist that the oath, which under the conditions of the contract is obligatory upon him to take, he shall in fact take, in those cases where the insurer has dealt personally with the insured." 7 Couch, Encyclopedia of Insurance, sec. 1521, p. 5413; 5 Joyce on Insurance (2d ed.), sec. 3302.

The decisions of state courts are in conflict on the question whether a failure by the insured to make proofs of loss within a stipulated time will bar a recovery. But there is no dissent from the rule that the insured must furnish proofs of loss where it is so stipulated, unless the insurer has waived the condition, or the case falls within some recognized exceptions. The reasons for the rule are well stated in Ostrander's Law of Fire Insurance, pages 288, 289:

"When, however, the policy particularly designates that proofs must be made by the person originally insured, unless the property covered has been sold and the policy assigned by the consent of the company, proofs cannot be made (in compliance with the terms of the policy), except by the person to whom the policy was issued.

"If it is important to the underwriter that it may know the person it insures, so it is important that it may have an option in selecting the person with whom it will adjust claims for loss. Moral and business character are qualities of the highest consideration in either relation. Many fires result from fraud, and there has been a large number from purely accidental causes where the claimant for loss has resorted to schemes of deception and fraud in presenting his proofs, stimulated with the hope of securing an adjustment by the computation of quantities or values on a fictitious basis. The insured, the owner of the property damaged or destroyed is the person with whom the insurer is dealing, and it has a right to receive his sworn declarations to traverse his statements and to challenge his good faith, when warranted in doing so. This

has been clearly provided for in the policy, and to substitute as sufficient the estimates and declarations of another contemplates changes so radical and important in the performance of contract obligations as to imply an abandonment of the original intention of the parties. A contract of insurance is nowhere more personal than in respect to its provisions concerning the adjustment of claims. The insured must present his claim under oath; he must produce a magistrate's certificate as to his good faith, and if required must submit to a sworn examination. Each of these matters relates to the person of the insured, and the importance of this requirement is too obvious to require argument. The person insured may be fairly presumed to be in possession of the largest number of facts and the most reliable information in regard to the circumstances of the fire and the extent of the loss, and if there be a fraud suspected, the insurer cannot be denied the right which he has stipulated for, to meet face to face the one who alone would have a motive for the perpetration of a crime. To excuse, therefore, the insured, who may have secreted himself to avoid arrest, and compel the insurer to accept proofs and adjust the loss with one who may know nothing of the cause of the fire, and who in preparation of the proofs is acting under but little of the responsibility which would rest upon the insured in performing the same duty, would be a gross perversion of justice and the setting aside of their plain contract obligations." See, also, Vance on Insurance, pp. 778, 779; German Fire Ins. Co. v. Grunert, 112 Ill. 68, 1 N. E. 113.

As no proof of loss was furnished by the insured, Goldberg, the next inquiry is, Does the evidence bring the case within any exception excusing him therefrom? We do not think it does. The evidence discloses that it was not impossible for insured to have complied with the stipulation, and that he was not absent when the loss occurred. That condition and that contingency have been held to be exceptions to the general rule. The insured was in Las Vegas at the time the fire

occurred. Two days later an adjuster for the defendant, one Dunbar, came from Los Angeles to Las Vegas to investigate the fire and make a report. He directed the insured to make an inventory of the property in the store, which was done. The inventory was given to Dunbar. He remained in Las Vegas until the night of the 19th of January, and then returned to Los Angeles. A day or two later the insured left Las Vegas, going to Los Angeles, where he executed the assignment on January 23, 1933. He left Los Angeles a day or two afterwards. Plaintiff later received a letter from him dated January 30, 1933, at El Centro, Calif., and received another letter from him dated February 8th, at Houston, Tex., in which he told plaintiff that if he wished to communicate with him in the next five or six days to address him at Tallahassee, Fla. On the 13th of February, plaintiff addressed a letter to him at Tallahassee, Fla., in which he said: "We have declined to accept the general assignment for the benefit of creditors because our adjuster found upon arrival at Las Vegas that the value of the assets remaining in the store were not sufficient to justify handling the assignment. Outside the stock of ammunition, practically the only assets of value consisted of the property which was found in the safe, for which we received an offer of $75.00. The situation would indicate that a substantial quantity of assets must have been removed from the premises sometime between the date of the investigation and the date of the arrival of our adjuster. The creditors are anxious to meet with you and we ask that you let us know by return mail just when you expect to be in Los Angeles so that we may arrange for a meeting of creditors." Plaintiff received no other letter from the insured prior to March 16, 1933. It thus appears that after the fire and the investigation by the adjuster the insured voluntarily absented himself from Las Vegas, and after the assignment, from Los Angeles, which was the home of the defendant. No good reason appears why, if it was imperative for him to

leave he could not have made the proofs of loss before departing, or have made such proofs thereafter. He was familiar with the matters necessary to be incorporated in such proof. It is contended that plaintiff tried to get insured to make proofs of loss. We find no evidence of it. In his letter to defendant at Tallahassee no mention is made of any such desire.

It is contended by plaintiff that he was unable to make the proofs because, as testified to by two of his witnesses, Dunbar, on leaving Las Vegas after the investigation, took with him the stock book and the invoices from which the inventory was made. This is denied by the latter, and we cannot substitute our judgment for the trial court on conflicting evidence. One Golden, a relative of the insured who was employed by him and who was working for him when the fire occurred, testified that the latter was called to Miami, Fla., on account of the illness of his mother who was in a hospital at that place. This is advanced as a reason for his departure and for not making the proofs. This may be a sufficient reason for his leaving, but it is no reason for his not performing a duty cast upon him by the law. It appears, however, that if he and Golden, who accompanied him on his travels, were on their way to the beside of a sick relative, they proceeded in a most leisurely manner, and were not averse to doing business on the road. According to plaintiff's testimony, the insured left Los Angeles on the 24th or 25th of January. By his letter to plaintiff of date February 8, it appears that he was in Houston, Tex., fourteen days later. In this letter he stated: "At present I am following up small business leads. Trying to buy and sell as I go along." In neither of his letters to plaintiff did he mention that he had been called away on account of his mother's illness.

The evidence discloses no exception to the general rule that we are aware of, under which the insured was excused from complying with the condition of the policy as to making proofs of loss. The fact of assignment does not work such an exception. The plaintiff

was given timely written notice by the defendant, after it had been apprised of the assignment, that any adjustment of loss must be made with the insured; but without such notice the assignment would not relieve the insured from complying with the conditions in the policy to furnish proofs of loss.

As stated in Joyce on Insurance (2d ed.), vol. 4, sec. 2322: "After a loss has occurred the right of the assured to the indemnity becomes a fixed and vested right. It is an obligation debt due from the company to the assured, and as such is assignable, and is not within the clause requiring notice of the assignment of the policy to be given to the company. It is, however, subject to such claims, demands, or defenses as the insurer would be entitled to make against the original insured."

We have given due attention to the authorities cited by plaintiff in support of his contention that plaintiff was authorized to furnish proofs of loss under the facts of this case. Plaintiff refers to 14 R. C. L. 1336, wherein it is said, "Proofs of loss may be made by an agent where the insured is not in a position to make them," and to Lumbermen's Mut. Ins. Co. v. Bell, 166 Ill. 400, 45 N. E. 130, 57 Am. St. Rep. 140, in note 5, in support of the text.

As we have pointed out, the evidence shows that the insured was in a position to make the proofs. So the statement of the text does not apply to the facts of this case. In Lumbermen's Mut. Ins. Co. v. Bell, supra, cited in the note as authority for the statement in R. C. L., supra, it appears that the insured was absent at the time of the loss, and did not return in time to make the proofs. The point in that case was decided upon the authority of German Fire Ins. Co. v. Grunert, 112 Ill. 68, 1 N. E. 113, wherein it was held that the general agent of the insured was authorized to make proofs of loss; the insured being absent at the time of the loss. All the cases cited by appellants are distinguishable on the facts from the instant case. In Brunswick-Balke-Collender Co. v. Northern Assur. Co., 142 Mich.

29, 105 N. W. 76, the plaintiff was a nonresident. In Scott v. American Ins. Co., 222 S. W. (Mo. App.) 1047, waiver was established. In Evans v. Crawford County Farmers' Mut. F. Ins. Co., 130 Wis. 189, 109 N. W. 952, 9 L. R. A. (N. S.) 485, 118 Am. St. Rep. 1009, the plaintiff was absent from home and did not know of the fire till long after the time required for making proofs of loss. The wife was left in charge of the property, and it was held that under such circumstances the wife could make the proofs of loss by implied authority of her husband, as an agent ex necessitate. It will be seen that that case bears no resemblance to the case at bar. In Findeisen v. Metropole F. Insurance Co., 57 Vt. 520, it was held that, under the particular circumstances of that case, the husband, as the agent of the wife, could make the proofs of loss; he having transacted all the business connected with the purchase and management of the insured property, and having procured the insurance, and the wife having no personal knowledge as to the property. Moreover, the policy contained the following provision: "It is a part of this contract that any person other than the assured, who may have procured this insurance to be taken by this company, shall be deemed to be the agent of the assured."

This case bears no resemblance to the case before us.

Appellant refers us to the case of Clark v. London Assurance Corporation, 44 Nev. 359, 195 P. 809, as authority for his position. It is not in point. The question determined in that case was that the failure to make proof of loss within the 60 - day period of limitation in the policy did not bar a recovery in the absence of a provision in the policy that such failure would work a forfeiture. The proof of loss was made after the 60-day period. In the case under consideration there was not even a substantial compliance with the condition. The insured made no proof of loss within the 60-day period or at all.

We also reach the conclusion that the evidence supports the finding of the trial court that there was no waiver on the part of defendant. As previously stated,

the defendant gave plaintiff timely written notice that any adjustment of loss must be made with the insured.

On March 22, 1933, shortly after plaintiff had rendered to defendant a purported proof of loss, he was notified in writing by the defendant and by Dunbar that the company did not recognize him as having any right to represent the insured, and that it objected to such proof on the ground, among others, that that statement of proof was not signed and sworn to by the insured, and that the company insisted upon a compliance with the terms and conditions of the policy. A copy of defendant's letter to this effect was at the same time mailed to the insured at Las Vegas, which, to the company, was his last known place of residence.

We deem it unnecessary to review the evidence which plaintiff claims establishes waiver. To do so would serve no useful purpose and prolong this opinion. Suffice it to say that the part Dunbar took in regard to the inventory had no such effect, and the statements attributed to him which plaintiff claims had such tendency were denied by him.

■ There are several other assignments of error in plaintiff's opening brief. They have not been urged and have therefore been disregarded. Smith v. Odd Fellows Bldg. Ass'n., 46 Nev. 48, 205 P. 796, 23 A. L. R. 38.

The judgment and order denying a new trial should be affirmed.

It is so ordered.