The opinion of the court was delivered by
McEnery, J.
The plaintiff brought this suit to recover damages for personal injuries inflicted upon him by the defendant corporation.
The defence is a general denial, and negligence on the part of •plaintiff. There was judgment in favor of the plaintiff in the sum of seven thousand four hundred dollars. The defendant appealed.
There is some conflict of testimony as to whether the plaintiff re•ceived the injury while stepping or jumping from the car when in *1672 motion, or whether he fell from the platform of the car while in motion, by a sudden jerk in accelerating the speed of the train. We are inclined to the opinion that the weight of testimony is to the effect that plaintiff jumped from the car while the train was in motion, and fell in [such a position that his foot was caught by the wheels. But there is no difference in principle, so far as plaintiff’s negligence is concerned, whether he met with the accident in jumping from the platform, or whether he was injured by stepping from one car platform to another.
The plaintiff’s testimony is as follows:
“ I was out to the base-ball game on Saturday, the 21st, and was coming in on the train, which was well crowded. I was sitting on the last seat on the platform; and as the train got in between Dryades and Baronne streets, coming almost to a stop, a considerable number of people getting off, I said to a party sitting next to me: 1 Let us walk up in front so that we can be near the electric cars.’ The crowd was running through the cars. We crossed through two cars, and came to the last platform. * * * I stepped across, and just as I got over my balance the train gave a jerk and threw me between the cars.”
Q. “That is, while the train was coming in you walked forward? ”
A. “ When the train got almost to Baronne, between Baronne and Dryades, I got up from my seat and crossed between the cars, and came to the platform of the second car. The train was barely moving ; and as I came there and made a step I got over my balance, and the train gave a jerk just at that time and threw me over. It (the train) went up so far that the first truck of the second car struck me.” .
Q. “Did you fall on the side toward the up-town side or the down-town side of the car? ”
A. “On the Baronne street side of the car, on Oanal street, with my head toward the cemeteries.”
Q,. “Who got on the car — most of the passengers; how do they get on those cars? ”
A. “On the side.”
Q. “So that it is one continuous platform, is it not, all around? ”
A. “Yes, sir.”
Q. “ Had you ever seen those (open) cars before that day? ”
A. “Yes, sir.”
*1673 Q,. “ Been in them frequently?”
A. “Yes, sir.”
Q,. “You had been to and from the lake on them prior to this accident?”
A. “ Twice to the lake.”
Q. “And to the base-ball park a number of times? ”
A. “Yes, sir.”
Q. “ From the place where you were sitting, if you had waited until the car stopped, couldn’t you have alighted with ease? ”
A. “Yes, sir.”
Q. “You had simply to step from the seat where you were seated out on the side, and on the ground? ”
A. 44 If I had waited for the car to stop? ”
Q,. “Yes, sir.”
A. “Yes, sir.”
Q, 4 4 Instead of waiting for the car to stop, and getting off from your seat, you preferred that day to go on through two cars on to another platform, from which you say you were injured. This is a fact, is it not? ”
A. “Yes, sir.”
Q,. “What exactly was your position? Were you trying to step off the car? ”
A. 44 No, sir; I was stepping from one platform to the other.”-
Q,. “When you were stepping from one platform to the other, why is it you did not hold on to the railing? ”
A. 441 just had my hands lying lightly on the rails, when I got over my balance, when the jerk came and threw me off my balance entirely. ’ ’
Q,. “So that while this car was in motion you went from one car to the other, and simply placed your hand on the top of the rail wi hout holding it?”
A. “Yes, sir.”
Q. “ Well, if you were in no particular hurry, why didn’t you stay in your seat until the car came to a standstill, and those people on the outside platform would have gotten off?”
A. 44 Well, it would have taken considerable time, and those cars stopped on the other side of Baronne street and I would have had to walk it anyhow.”
Q.. “What do you mean, Mr. Bemiss, by a sudden jerk?”
*1674 A. “ A sudden pull.”
Q. “ Forward?”
A. “Yes, sir.”
Q. “To pull the cars over a little further toward Oanal and cross Baronne street?”
A. “A little further toward the river.”
Q. “So that was a pull forward of the cars that bad not yet come to a standstill, in order that they might get further away from Baronne street?”
A. “ Yes, sir.”
From the testimony of plaintiff it is shown that when the train nearly reached Baronne str et it was barely moving. We presume this slow motion of the train was dictated by prudential motives in crossing Baronne street. At any rate, the train had not reached its destination, and there was no invitation, express or implied, for the passengers on the train to leave their seats for the purpose of getting off the train. The station is on Oanal street and in the full view of every one, and is generally known to the citizens of New Orleans. The plaintiff had been a frequent passenger on the train and must have known the place where the train permanently stopped.
The cars were equipped with a platform or step on each side, were open cars, and the passengers had only to step on this platform and then to the ground in order to leave the train with safety.
While the train was moving so slowly the plaintiff might have left it with comparative safety had he employed the means which the defendant had placed at his disposal.
It is certain, from plaintiff’s testimony, had he left his seat while the train was in motion and gone on the platform and attempted to step from one car to another, the accident would not have happened.
If the plaintiff had exercised reasonable care the injury would have been avoided. It would be useless to argue and cite authorities to this effect, that the stepping from one car to another without inducement or invitation or on a necessary errand while the train is in motion is dangerous and negligent.
In such a case the rule expressed in White vs. V., S. & P. R. R., 42 An. 990, applies:
“ In a suit for damages for injuries caused by alleged negligence of *1675 defendant, recovery requires that the record should establish (first) that the defendant was guilty of no contributory negligence, but for which, notwithstanding defendant’s negligence, the injury would have been avoided.” This doctrine has been uniformly adhered to in the jurisprudence of this State. Damont vs. Carrollton R. R. Co., 9 An. 441; Hanson vs. Mansfield Railway and Transportation Co., 38 An. 111; Woods vs. Jones et al., 34 An. 1087; Deikman vs. R. R. & S. S. Co., 40 An. 787; Weeks vs. R. R. Co., 40 An. 800; Curley vs. R. R. Co., 40 An. 810; Caldwell vs. R. R. Co., 41 An. 624; Walker vs. R. R. Co., 41 An. 796; Moore vs. Edison Illuminating Co., 43 An. 792; Byrd vs. City R. R. Co., 43 An. 822; Herlisch vs. R. R. Co., 44 An. 280; Schulte vs. R. R. Co., 44 An. 509; Clements vs. Electric Light Co., 44 An. 692; Ryan vs. Railway Co., 44 An. 806; Blackwell et al., vs. R. R. Co., 47 An. 268; Smith vs. Crescent City R. R. Co., 47 An. 833.
In Moore vs. Edison Illuminating Company, 43 An. 792, the suit for damages was founded on the injury a passenger in a street railway car received by putting his head out of the car window, which came in contact with a post. This court said, “ plaintiff’s negligence consists in putting his limbs where they ought not to be and exposing them to be broken without his ability to know whether there is or not danger approaching.” In the instant ease, the plaintiff voluntarily placed himself in a dangerous position, without his ability to know whether the car would be given a sudden jerk or not, or whether its equipments were in proper order. He was in a place where he ought not to have been, and where he voluntarily placed himself.
“ In actions for injuries through negligence it is a general principle that a person is answerable for the consequences of his negligence only so far as they are the natural and proximate result of the injury, as might have been anticipated by the ordinary forecast, and not for those consequences arising from a conjunction of his faults with circumstances of an extraordinary nature.” Weeks on Damnum absque injuria, Sec. 115, p. 230, which is quoted approvingly in the above ease.
In this case it is no justification to say that the plaintiff was going to a car on the train from which he could alight and be in closer connection with the Baronne street cars. It was no excuse for his movement from one car to another. Certainly the defendant corporation *1676 had no reason to anticipate such a movement on his part, and there was then no obligation on its part to provide against an unforeseen occurrence by having its equipments in order to meet such an improbable contingency. If the plaintiff had been in his seat or even stand - ing in his car and the injury had been inflicted upon him by the defective equipments in the car coupling, which it is alleged caused the sudden jerk, he would have just cause for subjecting the defendant to damages. The evidence does not sustain the charge that the equipments in coupling were defective or the cause of the injury the quick accelerated movement of the car. This movement was natural and to be expected. The train had, in crossing Baronne street, reduced its speed. To reach its designation, in the language of plaintiff, there was a sudden pull forward of the cars, which had not yet come to a standstill, in order that they might get further away from Baronne street. In this movement we can not appreciate the negligence o defendant.
In Woods vs. Jones, 34 An. 1086, it was held that a railroad company is not liable to a passenger for an accident which the passenger might have prevented by ordinary attention to his safety, even though the agents in charge of the train are also remiss in their duty. And this was in accordance with the doctrine now universally received that, although the defendant’s negligence may have been the primary cause of the injury, an action for such injury can not be maintained, if the proximate and immediate cause can be traced to the want of ordinary care and caution of the person injured. Grand Trunk Railway vs. Ives, 144 U. S. 429; Inland and Seaboard Coasting Co. vs. Tolson, 139 U. S. 551; Thompson on Negligence, 115, 117; 2 Thompson on Negligence, 1178; Parkerson’s Railway Accident Law; Cooley on Torts; American and English Encyclopedia of Law, Contributory Negligence; Damont vs. N. O. & Carr. R. R. Co., 9 An. 441; 83 Ill. 354; 5 Bradw. 242; 19 Conn. 566; 63 Conn. 26; 78 N. Y. 480; 101 Mass. 455; 104 Mass. 237; 56 N. W. 512; 57 Fed. 921; 34 Fed. 300; 26 S. W. 509; 33 P., 283; 25 N. Y. S. 1009; 34 N. Y. S. 978; 23 S. W. 42; 61 N. W. 514; 17 So. R. 253; 21 S. E. 571; 34 P. 124; 31 S. W. 185; 32 N. E. 356; 16 S. E. 813.
In the case of Brashear vs. Railroad Co., 47 An. 735, confidently relied upon by plaintiff, it was ascertained as a fact that the plaintiff was invited by the train signal to go to the platform.
We And no applicability of the other authorities cited by plain *1677 tiff to the facts of the case under consideration. The proximate cause of the accident was not the sudden jerk of the train in moving; but plaintiff’s contributory negl gence involuntarily placing himself in a dangerous position. Foster vs. Mo. Pac. Ry. Co., 21 S. W. 916.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that plaintiff’s demand be rejected at his costs.