## CITY NAT. BANK v. PIGOTT et ux.
### (No. 7297.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 18, 1925. Rehearing Denied March 18, 1925.)

1. **Carriers ⟜320(25)—Issues whether elevator operator negligently permitted door to close on passenger, or whether she stepped in way while it was being closed, held properly submitted.**

In passenger's action for injuries sustained while leaving elevator, issues whether elevator operator negligently permitted door to close on passenger as she was leaving car, or whether she stepped in way of door while it was being closed, *held* properly submitted under pleadings and evidence.

2. **Trial ⟜352(1)—Form of issue held not calculated to lead jury to believe that court was of opinion that defendant was negligent.**

Form of issue submitted to jury whether elevator operator negligently permitted door to close on passenger as she was leaving car *held* not calculated to impress jury with court's opinion.

3. **Appeal and error ⟜930(3)—Jury presumed to answer each issue without reference to others.**

Where all issues submitted to jury were properly segregated, it will be presumed from silent record that jury answered each without reference to the others.

4. **Carriers ⟜320(25)—Whether elevator operator failed to keep proper lookout before closing door held for jury.**

In passenger's action for injuries sustained while leaving elevator, whether operator failed to keep a proper lookout before closing door, to ascertain whether any one was leaving elevator, *held* for jury.

5. **Carriers ⟜287(1), 303(1)—Opening of passenger elevator door by operator an implied invitation for passengers to leave or enter.**

Act of operator in opening door of passenger elevator constitutes an implied invitation for passengers to leave or enter.

6. **Carriers ⟜280(4)—Elevator operator required to exercise highest degree of care.**

Elevator operator is required to exercise highest degree of care so as not to injure those lawfully on or lawfully entering or leaving elevator.

7. **Carriers ⟜303(1)—Elevator passenger calling for particular floor not bound by any doctrine of election.**

An elevator passenger who has called for a particular floor is not bound by doctrine of election, but may leave elevator at any floor at which it stops, and operator in such case owes same degree of care to him as to other passengers.

8. **Carriers ⟜320(30)—Whether elevator operator's failure to keep proper lookout constituted negligence which was proximate cause of accident held for jury.**

In passenger's action for injuries sustained while leaving elevator, whether operator's failure to keep proper lookout constituted negligence which was proximate cause of accident *held* for jury.

9. **Carriers ⟜347(1)—Whether elevator passenger guilty of negligence causing accident, held for jury.**

In passenger's action for injuries sustained while leaving elevator at floor other than one called for, evidence *held* to make plaintiff's negligence question for jury.

10. **Evidence ⟜5(2)—Common knowledge that it is difficult to keep count of floors on fast moving elevators, and that it is seldom done by passengers.**

It is a matter of common knowledge that it is difficult to keep an accurate count of floors on fast moving elevators, and that it is seldom done by passengers.

11. **Carriers ⟜333(1)—Elevator passenger not required to warn operator that she was about to leave car.**

Passenger, who sustained injuries while leaving elevator, *held* not required to warn operator that she was about to leave car.

12. **Evidence ⟜537—Chiropractor held competent to give expert opinion on injuries.**

Practicing chiropractor who was graduate of general college of medicine and had practiced for years as a registered and licensed physician before becoming a chiropractor, *held* competent to testify as an expert on issue of elevator passenger's injuries, though he had not been licensed to practice medicine under Medical Practice Act.

13. **Appeal and error ⟜930(1)—Appellate court required to resolve intangible doubts in support of jury's finding.**

Appellate court is required to resolve intangible doubts in support of jury's finding.

Appeal from District Court, Bexar County; Wm. S. Anderson, Judge.

Action by Edw. Pigott and wife against the City National Bank. Judgment for plaintiffs, and defendant appeals. Affirmed.

Taliaferro, Cunningham & Moursund and R. F. Spencer, all of San Antonio, for appellant.

Perry J. Lewis, H. C. Carter, Champe G. Carter, and Randolph L. Carter, all of San Antonio, for appellees.

SMITH, J. The case appears to be quite simple, and is essentially one of fact. The City National Bank operates a bank and office building in the city of San Antonio. The building is served by three passenger elevators, one of which at the time in question was operated by Edward Young, a 16 year old

---

boy. On January 3, 1922, Mrs. Pigott, one of the appellees, entered this particular elevator at the street floor, destined to the fifth floor. Several others took passage in the same elevator destined to various other floors. One passenger left the car at the second floor, another at the third. None had called for the fourth, but the operator stopped the car at that floor, and opened the door, whereupon Mrs. Pigott, mistakenly assuming this to be the fifth floor, undertook to get off. While she was in the act of leaving the car and was stepping through the doorway thereof, the door was suddenly closed upon her, pinning her to the door jamb. Subsequently, joined by her husband, she brought this suit against the bank to recover damages for personal injuries she claimed to have sustained in the accident. She sued for $15,000; the jury awarded her $5,000. The bank has appealed from the resulting judgment.

The evidence, construed most favorably to appellees, showed that one passenger left the car at the second floor, and upon starting up from there the operator called for "floors." Mrs. Pigott answered "5," and the operator repeated the number "5," verifying her call. Another passenger called for the third floor, and the operator stopped the car and let him off there. No one had called for the fourth, but when the car reached that floor the operator stopped it, and opened the door. Mrs. Pigott, seeing no one was there to take passage, and not knowing the number of that floor, assumed that she had reached her destination and that the door was being held open for her. Accordingly, she emerged from the group of passengers, and started out of the elevator, but as she was in the act of stepping through the doorway the door, released by the operator and suddenly closing, struck and pinioned her. The operator released her, she stepped out into the hallway, and the car continued on its upward trip.

The jury found, first, that the operator caused or permitted the door to close upon Mrs. Pigott as she was leaving the elevator; second, that the operator failed to keep a proper lookout, before closing the door, to ascertain whether or not any one was leaving the elevator, and that each of these acts constituted negligence directly causing or contributing to the injuries complained of. The jury further found that Mrs. Pigott was not guilty of negligence in failing to warn the operator that she intended to leave the elevator at the place of the accident, and that she did not step in the way of the elevator door while it was being closed, thus acquitting her of contributory negligence.

Appellant first contends that the court should have directed a verdict for appellant, but for reasons hereinafter shown we overrule this contention, which is raised in points 1 and 2 in appellant's brief.

[1-3] The jury found that the elevator operator negligently caused or permitted the door to close upon Mrs. Pigott as she was leaving the car, and appellant complains of the submission of this issue and the finding of the jury thereon. We will consider this finding with the correlated finding that Mrs. Pigott did not step in the way of the elevator door while it was being closed. It is conceded that the closing door struck Mrs. Pigott as she was in the act of passing through the doorway. Appellant's contention is that she stepped in the path of the moving door, while appellees contend the door was released as she was in the act of crossing that path and struck her before she cleared the entrance. The distinction here sought to be drawn may appear to be quite fine, but the parties clearly drew it in their respective pleadings. The theory seemed to be that the accident was the proximate result either of the act of the operator in releasing the door upon Mrs. Pigott as she was passing in front of it, or of the act of the latter in stepping in front of it while it was in the process of closing; that the affirmative act of the operator on the one hand, or of the passenger on the other, caused the accident. The trial court took cognizance of this distinction and submitted the issues in the very form pleaded by the respective parties, and the jury finally vitalized it by their findings on those issues. We conclude that the record warranted the submission of the issues, and that the evidence was sufficient to support the findings. Appellant contends that the submission of the first issue, as to the act of the operator in closing the door upon Mrs. Pigott, was calculated in the form given to lead the jury to believe that the court was of the opinion that appellant was guilty of negligence, and influenced the jury to later find that the operator failed to keep a proper lookout. We overrule these contentions. If the issue was a proper one, as we have held, it could hardly have been submitted in simpler form. It was not calculated to impress the jury that the court was of the opinion that appellant had been negligent, any more than the submission of the converse issue indicated to the jury that the court believed Mrs. Pigott had been guilty of negligence. Nor do we see any reason for assuming that the submission of the first issue had any influence upon the jury in their consideration of or answer to any other issue submitted to them. All the issues were properly segregated by the court in submitting them, and it will be presumed from a silent record that the jury answered each without reference to the others. We overrule appellant's points 4 to 15, and 29 to 34.

[4] Appellant asserts under points 16 to 27 that there was a lack of evidence to warrant the submission or finding of the jury upon the issue of whether or not the operator failed to keep a proper lookout, before clos-

ing the door, to ascertain whether any one was leaving the elevator. We overrule these points. The operator testified that he stopped the car and opened its door at the fourth floor in response to a signal that some one on that floor desired to take passage for an upper floor; that when he stopped there and opened the door, he looked up and down the hallway and around a cement column to his right, but no one was near the entrance or anywhere in the hallway; that seeing no one was there to take passage, he released the door which thereupon automatically sprung shut upon Mrs. Pigott as she was in the act of passing through the doorway. He does not seem to have taken any notice of the passengers then in the car to ascertain if any of them were about to get out, but released the door without thought of them when he ascertained that no one was to take passage from that floor. Mrs. Pigott testified that she was not excited, did not act with unusual haste, and that the operator was standing erect at his post holding the door open at the time she started out of the car; that as she was passing through the doorway the door suddenly closed upon her. This is the substance of the testimony upon which the jury found the operator failed to keep a proper lookout.

[5, 6] When the door of a passenger elevator is opened by and under the control of its operator, the act constitutes an implied invitation to actual passengers to leave or prospective passengers to enter the car if they so desire, just as the stopping of a railroad passenger train at an open passenger station is an invitation to passengers to enter or leave the train, and, as in the case of train operatives, the elevator operator is required to exercise the highest degree of care to so operate his vehicle as not to injure those lawfully upon or lawfully entering or leaving it. The operator was not authorized in this case to assume that because none of the passengers affirmatively called for the fourth floor, none would undertake to get off there, for when he stopped the car there and opened the door a new relation was established, a new status created, whereby any passenger who might then decide to do so was invited to leave the car. In such situation, by his acts in stopping the car and holding the door open, he was in the position of having called, "All who wish to enter or leave the car may now do so," and it was his duty before undertaking to close the door to use his wits to ascertain if any of the passengers were acting upon this invitation.

[7, 8] An elevator passenger who has called for a particular floor is not bound by any doctrine of election. He may change his mind anywhere in his flight upward or downward, and decide to get off at another floor than that previously called for. In such case the stopping of the car and opening of the door is an implied invitation to him to make his exit, and if he so elects the operator

must use towards him precisely the same degree of care that would have been due him at his original and specifically designated destination. This duty requires the operator to use every reasonable means to ascertain before releasing the door whether any of the passengers in the car are acting or are about to act upon the invitation. The surest means and in this case apparently the only means available to the operator, was to look about him and observe the attitude of the passengers, but he made no effort to do so. In fact his own testimony is in effect that, upon ascertaining that no one was there to take passage, he released the door without taking any thought or notice whatever of the passengers in the car. From this circumstance the jury were warranted in finding that the operator failed to keep a proper lookout, that this failure constituted negligence, and that such negligence was the proximate cause of the accident. These conclusions require the overruling of points 16 to 27, both inclusive.

[9, 10] But appellant contends that the evidence showed as a matter of law that Mrs. Pigott was herself guilty of negligence causing the accident. The passengers on this elevator had no means of ascertaining what floors they were approaching or passing except by keeping an accurate count thereof in their flight, which as a matter of common knowledge is difficult to do while upon fast-moving elevators, and is seldom done by passengers. Be that as it may, however, Mrs. Pigott in her upward flight did not know or undertake to ascertain or keep in mind the precise location of the car with reference to floor numbers, and it is not contended that she rested under any duty to exercise such alertness. She had called for the floor she wanted, the fifth; the operator had acknowledged the call. She knew the car had left the third floor, that no one had called for the fourth, but she did not know whether or not she had passed the fourth. The fifth was the first after the third for which there had been a call, which was her own; there was no reason known to her for stopping the car short of her destination. The car was stopped, the door was opened, there was no one outside ready to take passage, or even in sight. Under these conditions, she assumed that the car was stopped and the door held open for her, and upon the implied invitation to make use of the exit she undertook to do so in the usual way, but the door was suddenly closed upon her as she was leaving.

[11] Appellant contends in this connection that Mrs. Pigott should have warned the operator that she was about to leave the car. We overrule this contention also. Mrs. Pigott assumed, with ample reason as we have endeavored to show, that she had reached her destination, that the door was opened to permit her exit, and would not be closed until she could get out of the car. In such situation and under such assumption, there

was no occasion for her to announce to the operator that she accepted his invitation and would get out there; it would have been most unusual for her to have done so, in fact. This very issue was submitted to the jury in response to appellant's own pleadings and without objection from it, and the jury resolved the issue against appellant upon what we conclude was sufficient evidence. Accordingly, we overrule appellant's points 3, 26, 27, and 28, in which these questions are presented.

[12] Among the witnesses testifying for appellees upon the issue of injury was one S. W. Wesley, a chiropractor. This witness was offered as a medical expert, and appellant objected to him testifying, and to his testimony, as such, upon the ground that he had not been licensed to practice medicine under the present Medical Practice Act of this state (chapter 138, Reg. Sess. 38th Leg.); that not being qualified under the statute to practice medicine, he was not qualified and could not qualify as a medical expert for the purpose of testifying. It was shown that the proffered witness was a graduate of a general college of medicine, had practiced medicine in Texas for 25 years as a registered and licensed physician under the law prior to the present act, but subsequently became a chiropractor, taught for two years in a chiropractic college in Iowa, and thereafter practiced as a chiropractor for eight years, and is still practicing it. We thing this experience was sufficient to authorize the witness to give his opinion as an expert, and the fact that he had not been licensed under the present act was wholly immaterial. Individual knowledge, skill, veracity—surely these have not yet been brought under the influence of regulatory and restrictive legislation. We overrule points 35 and 36.

[13] Appellant vigorously contends that the verdict is excessive. Looking at the bare record in the case the evidence upon the issue of injury and damages does not appear to be entirely satisfactory, but under the rules we are obliged to resolve intangible doubts, such as we may have, in support of the jury's findings. The jurors were in a better position than we are to discern the true situation. We overrule appellant's thirty-seventh and last point, and affirm the judgment.