MARMORSTEIN, RECR., *v.* SCHUCK, AN INFANT.

(Decided February 6, 1928.)

Messrs. *Dustin, McKeehan, Merrick, Arter & Stewart,* for plaintiff in error.

Messrs. *Payer, Minshall, Karch & Kerr,* for defendant in error.

VICKERY, J. This action came into this court on a petition in error to the common pleas court of Cuyahoga county.

In that court plaintiff, by her father and next friend, brought an action against the defendant, Max Marmorstein, receiver of the Walther Apartments, to recover damages for an injury occasioned to her in an elevator installed in said apartment building, and in the court below she recovered a judgment for some $12,000. A motion for a new trial was made, and in support of that motion certain affidavits of two of the jurors, besides another affidavit, were introduced, reference to which will be made later. On the hearing before the court on a motion for a new trial, the same was overruled, and a judgment entered upon the verdict, and it is to reverse that judgment that error is prosecuted here.

Several errors are alleged as grounds why this case should be reversed. This cause came before us once before at which time the jury had found for the defendant, and this court reversed and remanded

cause, for the reason that the trial judge charged the doctrine of contributory· negligence, although the child that was injured was but two and one-half years old. The new trial resulted in a verdict for the plaintiff, and error is prosecuted here.

I have no hesitancy in saying· that, if the person injured had been an adult, she would have been barred from recovering, because such actions in an adult would clearly have been contributory negligence that would bar her from recovering, but the courts of Ohio have steadily·adhered to the doctrine that contributory negligence cannot be attributed to a child two and one-half years old; consequently the question of contributory negligence is eliminated from consideration, and the only· question that remains is whether the plaintiff in error was guilty of any negligence which contributed to this injury.

Let us review the situation. Here is an automatic elevator in a large apartment house. Apparently there were solid doors attached to the elevator shaft on each floor, but they were not attached to the elevator cage. The doors on the elevator cage were collapsible doors. When a passenger would enter the elevator, he would close the doors by hand and then push the button, and the elevator would then proceed to the floor indicated by the button that was pushed. In this particular elevator cage there was a collapsible door in back and in front; that is, it opened out on either side. The collapsible doors were made of strips of iron, or steel, or bronze, and the evidence shows that they extended from the top to the bottom of the cage, and at the bottom at least the bars were three and one-half inches apart and eight inches high; that is, there

was a space close to and adjoining the floor of the elevator three and one-half inches wide and eight inches high.

It will not be necessary to notice the rest of the construction of the door. The elevator cage did not fill the entire space of the shaft; perhaps they do not anywhere. But there was a space between the outside of the cage and the wall from four to six inches, and when the cage arrived at a floor, the floor projected over into the shaft so that it came practically in contact with the floor of the elevator cage; there being not more than an inch of space between the outer edge of the cage floor and the floor of the apartment at which the elevator was to stop.

The evidence shows that the projection extending from the various floors into the elevator shaft was of concrete or steel, and it sloped upwards, so that it would push inward anything that protruded through the opening of the cage, if it came in contact with this projection into the shaft space as the cage approached the floor, thus preventing a person from being injured.

The apartment house had seventy apartments and seven floors. The plaintiff's mother and father were living in this apartment house, and were accustomed to use this elevator. At the particular time when this accident occurred, the little girl's mother and the little girl got into this elevator together, and at the same time another lady, who was an acquaintance, and perhaps a tenant in the same building, likewise got into the car. This other lady spoke to Beverly Jane, and the little girl bashfully retreated to the rear of the car, where, as already stated, there

was a collapsible door with the space of three and one-half inches by eight inches, and, as she backed up against the rear door, she either put her foot into or her foot went accidentally into this open space. The mother, operating the car, not noticing this, nor the other lady either, they proceeded upward, and when they came to the next floor the little girl's foot was caught between the projection into the elevator shaft space and the floor of the elevator, and her foot was crushed, so that the toes and front part of her foot had to be amputated, and, as I understand, there was nothing left but the fraction of a little toe, and she was permanently crippled, and now has what is called a club foot. The foot got wedged in such a shape that it stopped the further progress of the car, and some effort had to be used to release the little girl. This, I think, is a fair statement of this case as shown by the record.

Now there are several grounds of negligence alleged in the petition, but the one relied upon was that here was a collapsible door and a space so great as to permit a child, or even a grown person, to put a foot into it, and then the floor, projecting into the elevator shaft, when the elevator arrived at that point, would injure the one who had thus put his foot into this space.

Now, as already stated, if this person had been a grown person, this manner of placing a foot in that opening in the collapsible door would undoubtedly be contributory negligence, and such person could not recover; but not so in the instant case. It must be remembered that it is a natural thing for people to stand back in the elevator. It might have been a different proposition if this elevator had a door

only on one side. I am not claiming that it is negligence to have a door on both sides, but I do think, however, that there is a different degree of care necessary where there are dangers not only in the front but also in the rear of an elevator cage, and in this case, had there been proper care used in this *rear* part of the elevator—rear part with regard to the place that Mrs. Schuck entered as the front—in having said rear part so closed that it would be impossible for any person to slip his foot through the opening, this accident would not have happened. Then the proximate cause of this injury, eliminating the doctrine of contributory negligence, was the fact that this rear collapsible door had an opening three and one-half inches wide and eight inches high coming down to the floor of the cage, which would permit a child to put its feet into that opening, resulting in an accident as heretofore outlined. We think that that was a question of negligence to be submitted to the jury, and, the case having been submitted to the jury, and the jury having found for the plaintiff, we do not see how it is within our province to disturb the verdict upon this ground.

That the child was injured there is no question. That she was injured in the manner outlined there is no question. That she was guilty of no contributory negligence is beyond question. Under the circumstances of this case, the question was one for the jury, and, the jury having found for the plaintiff, we do not feel called upon to disturb the verdict in this respect.

Now it is alleged that there was misconduct in this case by reason of which a mistrial should have been declared and a new trial granted. It seems

that one of the jurors, by the name of Berry, while this case was under discussion, after the evidence was all in and before the charge of the court, on his own volition, surely not with the consent or knowledge of the plaintiff, took it upon himself to go out to this place and ride up and down this elevator and talk with the elevator man, for at this time it seems that a man had been put in charge of the elevator. An affidavit of this man, together with the affidavit of the elevator man, and one other juror, was introduced on a motion for a new trial.

If there is anything that is well settled in this state, it is that a verdict of a jury cannot be impeached by affidavits on testimony of jurors. It would be contrary to public policy if that was not the rule. Now in this case it is singular that this man Berry, and the other juror who made affidavit, did not sign this verdict. Apparently they were opposed to the plaintiff, and seemed to have become advocates for the defendant in order to upset this verdict. There is nothing in this record which would admit the affidavit of either of these jurors as to what took place in that jury room, unless it be the affidavit of the elevator man. Now there is nothing to show what took place in the jury room except the affidavits of these two jurors.

The elevator man simply testified that a man, whom he afterwards learned to be a juror, rode up and down the elevator and asked him some questions, but it is not claimed in this case that it was negligence not to have an operator. Every other fact or condition of the elevator, whatever this juror found, was in evidence, and he could not have

told the jury anything that they did not already know, except that this elevator was now in charge of an operator; but, inasmuch as it was not claimed, and is not claimed now, that it was negligence not to have an operator, we do not see how that could become material. Now apparently what Berry saw did not change his mind. If it did, it was in the interest of the defendant, because he voted against or refused to sign the verdict. It is argued here that he did not sign it on the question of liability. There is nothing in the record to indicate why he did not sign. He simply did not sign.

There were two questions before the jury. One was as to whether there was liability at all, and the other was as to the amount to be recovered in case of a liability. There is nothing in the record to indicate why these two men did not sign this verdict, whether because the amount was too large that was fixed upon by the jury, or because there was no liability; but it is immaterial in any event. There were nine of the jurors who signed this verdict for the plaintiff, and nine jurors, under the law, can return a verdict, and, inasmuch as none of the nine who favored this verdict filed any affidavits, one cannot help but come to the conclusion that the two who did not sign the verdict favored the defendant, and therefore the defendant was not prejudiced, and, so far as the record shows, they may have always been for the defendant. The juryman Berry ought to have been disciplined very severely by the court for having violated his oath as a juryman and having sought to find evidence outside, on his own responsibility. That, however, was up to the trial court, and it is not for us.

It would be manifestly unjust if a juror, who may have allied himself with the defense, could by doing some improper thing for which the plaintiff was in no way responsible have a verdict set aside that otherwise would be proper. We do not think in this case that the evidence of the jurors was properly before the court, and it should not have been received, but, after having been received, their affidavits did not convey any other information than was already before the jury, and, inasmuch as they were made by those who voted for the defendant, we do not see why this verdict should be disturbed.

Therefore, so far as the testimony and the conduct of these jurors are concerned, we do not find sufficient error to reverse this case.

Now there is one further alleged error, and that is misconduct of the lawyer for the plaintiff. I have read and re-read the language of the lawyer, and it seems to be nothing more than legitimate argument, which one might properly advance from the evidence introduced in this case. The argument of counsel on the other side not being before us, we do not know what, if anything, provoked this argument; nor do we think it was erroneous; nor do we think that it was misconduct to draw the conclusions that he did in his argument. You cannot always measure with exact nicety just how much zeal a lawyer in his cause should use with respect to his argument, but I think the uniform rule has been to allow a large latitude, and we do not think the lawyer in this instance transgressed that latitude.

We have gone over this entire record and heard the arguments of counsel, and have come to the con-

clusion that there is not sufficient error in this record to warrant a reviewing court in disturbing it. The judgment will therefore be affirmed.

*Judgment affirmed.*

SULLIVAN, P. J., and LEVINE, J., concur.