STUMPF v. BARONNE BUILDING, INC., ET AL.

———

(February 16, 1931. Opinion and Decree.)
(March 23, 1931. Rehearing Refused.)

———

Wm. W. Ogden and Wm. W. Westerman, of New Orleans, attorneys for plaintiff, appellant.

St. Clair Adams, of New Orleans, attorney for Baronne Bldg., Inc., defendant, appellee.

Monroe & Lemann and Nicholas Callan, of New Orleans, attorneys for Leo Fellman, defendant, appellee.

HIGGINS, J. Plaintiff brings this suit against the Baronne Building, Inc., as the owner and operator of the Baronne Building, and Leo Fellman, as its agent or manager in charge or operator in his own behalf, in solido, to recover damages for personal injuries alleged to have been sustained by him, while a passenger in an elevator in the building. The petition alleges that the plaintiff is a dentist and a tenant in the Baronne Building, with office space on the fifth floor; that there are three elevators installed in the building, the cars of which are not equipped with any gate or door, which, upon being closed, would complete the enclosure of the elevator car and prevent passengers from coming into contact with that portion of the wall of the elevator shaft opposite the doorway of the car; that there are extensions or projections, on the wall of the shaft and on the various floors of the building, opposite the doorway of the elevator car; that on November 20, 1927, at

about 12:45 p. m., the petitioner was a passenger in one of the elevators, which was descending from the fifth floor and that another passenger in the elevator car, in attempting to light a cigarette, ignited a box of matches, which he threw from him into the lap of the female operator of the elevator car, who, in turn, negligently and carelessly threw the burning box of matches from her and into the face of petitioner; that, in stepping away from the fire, petitioner slipped, precipitating him beyond the limits of the elevator car doorway, and that he was carried down by the descending car in such a manner that his right hand struck the obstructions or projections on the wall of the shaft beside the unguarded side of the elevator car with great force, causing a fracture of three bones of his right hand; that defendant was guilty of negligence in not in any manner protecting petitioner, as a passenger in the elevator car, by a gate, railing, partition, or bar on the elevator car, from coming into contact with the obstructions or projections on the wall of the elevator shaft, consisting of the top of the gates and rails of the grillework which projected into the shaft a distance of several inches.

The petition further alleges:

"That the injuries sustained by petitioner were caused solely and proximately by the negligence and carelessness of defendants herein, which said negligence and carelessness is set forth as follows:

"(a) Failure on the part of defendants herein to provide a guard, gate, door, partition, or suitable protection at the entrance to said elevator car.

"(b) The negligence of defendants, their agent or employee, in throwing the lighted box of matches into petitioner's face.

"(c) The violation of its duty of safe carriage owed to petitioner, and its duty to use the utmost care and diligence for the protection of passengers, and its failure to equip said elevator car with the protection and modern equipment with which present-day elevators should be equipped."

Both defendants filed exceptions of no right or cause of action, which were sustained, and from a judgment dismissing the suit the plaintiff has appealed.

The exception of no cause of action is based upon several grounds:

First, that the failure to equip the elevator car with the protecting doors was not the proximate cause of the accident;

Second, that if defendant was negligent in failing to provide the elevator car with a door, the plaintiff had assumed the risk because of his tenancy in defendant's building; and

Third, that the obligation of defendant as owner of the building and operator of the elevator was to exercise ordinary care, and his duty in this respect was fully discharged by the operation of an elevator car without a door.

We shall discuss these issues in the above order.

The first contention concedes, arguendo, that it was negligence on the part of defendant not to have had a guard rail or a collapsible door on the elevator car. It is argued that such negligence was not the proximate but the remote cause of the accident; that the proximate cause of the accident, without which it would not have happened, was the negligent act of the person lighting the cigarette and igniting the box of matches and throwing it into the lap of the elevator operator.

The rule of law is that a party is responsible for the reasonably to be expected consequences of a negligent act, but,

where an intervening, independent act of negligence breaks the chain of causation, then the proximate cause is the act of intervening negligence, and not the original act of negligence. This rule, as stated in Weeks on Damnum Absque Injuria, sec. 115, p. 230, and quoted with approval in Moore v. Edison Illuminating Co., 43 La. Ann. 792, 19 So. 433, and in Vemiss v. Railroad Co., 47 La. Ann. 1675, 18 So. 711, 713, is as follows:

"In actions for injuries through negligence, it is a general principle that a person is answerable for the consequences of his negligence only so far as they are the natural and proximate result of the injury, as might have been anticipated by ordinary forecast, and not for those consequences arising from a conjunction of his faults with circumstances of an extraordinary nature."

In this case the alleged intervening act of independent negligence was the throwing of the box of lighted matches, which caused the plaintiff to lurch forward and to engage his hand in the elevator shaft, causing the injury sued for. It is said that the absence of the gate is the remote and not the proximate cause. It would appear to us that it must have been contemplated that the failure to provide a door on the elevator car might reasonably result in some such accident as that experienced by the plaintiff in this case.

In the case of Munsey v. Webb, 231 U. S. 150, 34 S. Ct. 44, 45, 58 L. Ed. 162, the plaintiff sued the owner of a building for causing the death of deceased in an elevator. Negligent construction and management of the elevator were alleged. The elevator car did not quite fill the shaft, and the bottom of the floor of it, which was at right angles, projected right into the shaft about three and one-half inches. The car was equipped with a collapsible door, which was open at the time of the accident. Between the fourth and fifth floors the deceased fell and his head was caught between the projecting bottom of the fifth floor and the floor of the car and was crushed. The court held:

"The plaintiff in error argued at some length that there was no negligence, because the fall of deceased was something wholly out of the ordinary course, and not to be foreseen; or that, if there was negligence in any sense, it was not the proximate cause of the death, but merely a passive condition made harmful by the fall. Neither argument can be maintained. It is true that it was not to be anticipated specifically that a man should drop from internal causes into the open door of the car. But the possibility and the danger that in some way one in the car should get some part of his person outside the car while it was in motion was obvious, and was shown to have been anticipated by the door being there. In some circumstances, at least, it was a danger that ought to be and was guarded against. It is said that the danger was manifest only when the car was crowded, and that the door was needed only for that. If the duty to have the car shut on all sides had been created with reference only to conditions different in kind from those of the accident, it may be that the plaintiff could not avail himself of a requirement imposed alio intuitu. The Eugene F. Moran [v. New York Cent. & H. R. R. Co.] 212 U. S. 466, 476, 29 S. Ct. 339, 53 L. Ed. 600, 604. But the accident was similar in kind to those against which the door was provided, and we are not prepared to say, contrary to the finding of the jury, that the duty to keep it shut or to guard the space with the arm did not exist in favor of all travelers in an elevator having the structure that we have described. It was not necessary that the defendant should have had notice of the particular method in which an accident would occur, if the possibility of an accident was clear to the ordinary prudent eye. Washington & Georgetown R. R. Co. v. Hickey, 166 U. S. 521, 526, 627, 17 S. Ct. 661, 41 L. Ed. 1101, 1103.

"If there was negligence, it very properly could be found to have been the proximate cause of the death. See Milwaukee & St. Paul Ry. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256. Even if it were true that the neglect was merely a pass-

ive omission, the deceased was invited into the elevator, and the principle of the trap cases would apply. Corby v. Hill, 4 C. B. (N. S.) 556, 563. Sweeny v. Old Colony & Newport R. R. Co., 10 Allen [Mass.] 368, 374, 87 Am. Dec. 644. But that is not the case. The defendant is sued for having crushed the head of the deceased by forces that he put in motion. He replies that it would not have happened but for the unforeseen fall of the deceased without the defendant's fault, and to this the plaintiff rejoins and the jury has found that the defendant was bound to take the easy precaution which he had provided against any and all ways by which a passenger's body could get outside the car while it was going up. Hayes v. Michigan Central R. Co., 111 U. S. 228, 241, 4 S. Ct. 369, 28 L. Ed. 410, 415; Choctaw, Oklahoma & Gulf R. R. Co. v. Holloway, 191 U. S. 334, 339, 24 S. Ct. 102, 48 L. Ed. 207, 210. The whole question comes down to whether we are prepared to say as matter of law, against the finding of the jury, that, in an elevator constructed as this was, with a special source of danger in the shaft outside the car, to require the defendant to guard the door space in transitu, at his peril, is too strict a rule. We cannot go so far. McDonald v. Toledo Consol. S. Ry. Co., 20 C. C. A. 322, 74 F. 104, 109."

See, also, Munsey v. Webb, 37 App. D. C. 185.

In the case of Siegel, Cooper & Co. v. Trcka, 218 Ill. 559, 75 N. E. 1053, 1055, 2 L. R. A. (N. S.) 647, 109 Am. St. Rep. 302, a passenger, riding in an elevator not equipped with any gate or door, was thrown to the floor by another passenger, and his leg extended over the platform of the car and it was crushed against the upper casing of the doorway. The court said:

"It is first contended that appellant is not liable in this action because the proximate cause of the injury was the negligent act of the boy who threw appellee upon the floor of the elevator. If, however, appellant was guilty of the negligence charged in the declaration, and without which the injury in question would not have occurred, then it would make no dif-

ference, as to its liability, that some act or agency of some other person or thing also contributed to bring about the result for which damages are claimed. Both or either of the contributing agencies were liable for the injury occasioned by their negligence, appellee being without fault and not held to have assumed the risk involved in the improper construction. * * *

"Counsel for appellant, however, insist that the appellant could not foresee such a combination of circumstances as led to the injury, in this case, and therefore cannot be held to have been negligent, citing Armour v. Golkowska [202 Ill. 144, 66 N. E. 1037], supra. Whether this particular set of circumstances might have been foreseen or not, the fact of the accident proves the conditions to have been dangerous, and if the jury were of the opinion, as we think, under the evidence, they might well have been, that reasonable prudence and care would have required a different construction, then appellant is chargeable with negligence for permitting the conditions to exist as they were."

In the case of Marmorstein v. Schuck (1928) 29 Ohio App. 145, 163 N. E. 218, 220, where a girl had her foot crushed by sticking her foot through the open space beneath the rear collapsible door of an elevator car, the court said:

"The proximate cause of this injury * * * was the fact that this rear collapsible door had an opening of 3½ inches wide and 8 inches high coming down to the floor of the cage, which would permit a child to put its feet into that opening, resulting in an accident as heretofore outlined. We think that that was a question of negligence to be submitted to the jury."

See, also, Smith v. Odd Fellows Bldg. Association (1922) 46 Nev. 48, 205 P. 796, 23 A. L. R. 38; Strobel v. Park, 292 Pa. 200, 140 A. 877, 57 A. L. R. 253.

The lighting and throwing of the matches and the falling of the plaintiff against the wall of the shaft and the obstructions thereon may be said to be the immediate

cause of the accident, but it formed only the connecting link between the injury and the negligence of the defendants. Had the front of the car not been open and the obstruction on the wall of the shaft not present, a condition which existed only because of the alleged negligence of the defendants, the injury would not have been inflicted. An injury that is the natural and probable consequence of an act of negligence is actionable and such an act is the proximate cause of the injury.

In the light of the foregoing authorities we are of the opinion that the petition alleges that there was causal connection between the negligence of the defendants and the injury sustained by the plaintiff. The alleged negligence of defendants was, therefore, the proximate and not the remote cause of the accident.

Counsel for defendants refer us to the cases of Palmetto Fire Ins. Co. v. Clarke Garage Co., 6 La. App. 420; Busbey v. Hamiter-Busbey Mill & Elevator Co., 125 La. 241, 51 So. 184; Globe & Rutgers Fire Ins. Co. v. Standard Oil Co., 158 La. 763, 104 So. 707; and Moore v. Jefferson Distilling & Denaturing Co., 169 La. 1156, 126 So. 691. We do not believe that these cases are in point and are to be distinguished from the present one because, in the instant case, the defendants, as ordinarily prudent persons, could or should have foreseen that accidents of this kind would happen, and should have adopted an adequate guard or protection against the same. In the cited cases the court found that the defendants, as ordinarily prudent persons in the exercise of ordinary care and foresight, could not have anticipated the kind of accident which caused the injuries, and hence the negligence of defendants in those cases was not the proximate cause of the injuries.

The argument on the question of the as-

sumption of risk is based upon the ground that the plaintiff was a tenant in defendants' building and that a tenant may not recover from a landlord for injuries in consequence of the dangerous condition of the leased premises of which he had knowledge; that plaintiff used the elevator in defendants' building many times a day; that he knew the elevator cars were not equipped with collapsible doors, rails, and guard; that he did not complain of their absence either verbally or in writing; that by his conduct, he "voluntarily subjected himself to a danger known to himself and for that reason he assumed the risk and is precluded from recovering." There is nothing in the petition to show the frequent use of the elevators by plaintiff, though we take it to be a fair assumption from the fact of plaintiff's tenancy. The proposition of law advanced here, to the effect that a tenant is estopped from claiming damages from his landlord due to a defective condition of the leased premises, simply because the defect has come to his knowledge, is, we believe, not sustained by the jurisprudence, particularly the latest cases on the subject. Boutte v. N. O. Terminal Co., 139 La. 945, 72 So. 513; Klein v. Young, 163 La. 59, 111 So. 495; Ciaccio v. Carbajal, 142 La. 125, 76 So. 583; Thomson v. Cooke, 147 La. 922, 86 So. 332; Harris v. Tennis, 149 La. 295, 88 So. 912; Richard v. Tarantino, 15 La. App. 311, 131 So. 701.

What is it that plaintiff is charged with having known about the defective condition of the elevator cars? That they had no collapsible doors. Assuming that plaintiff can be charged with knowledge that doors on an elevator are an advantage in guarding against accidents, must he also be held to know that doors on elevator cars, however desirable, are in general use or available as standard safety equipment? For example, it was strenuously

contended by defendant that it was only recently that elevator cars were, as a matter of fact, equipped with doors at all. The landlord was the one who should have known of the state of the art of manufacturing elevators and what devices had been adopted as standard in that industry for the protection of passengers, and not his tenants and those using the elevators. But, in any event, it certainly cannot be successfully argued that the tenant in an office building is charged with notice of obstructions or projections in the elevator shaft or wall because he uses the elevator frequently. The petition charges the defendants with negligence in both respects, i. e., in not having a door on the elevator car and also in failing to protect plaintiff from being injured by the obstructions jutting into the elevator shaft. Certainly plaintiff cannot be charged with notice of these obstructions in the elevator shaft and cannot be said to have assumed the risk resulting therefrom.

The cases of McLaughlin v. Stallings, 143 La. 62, 78 So. 239, and Clay v. Parsons, 144 La. 985, 81 So. 597, cited by defendants, are not in point, for in each of those cases the evidence showed that the plaintiff had expressly assumed the risk.

We conclude that the second ground of the exception is without merit.

The third ground of the exception presents the most serious question in the case, i. e.: Is it negligence, per se, to fail to equip an elevator with an inside gate or door which will move up and down with the elevator and which, when closed, will complete the enclosure of the car and will prevent any person in the elevator from coming into contact with the surrounding walls of the elevator shaft?

In approaching this question we find that the views of counsel, as to the measure of duty owed to a tenant by an owner and operator of a building equipped with elevators, are widely divergent. Counsel for plaintiff contend that the duty owed is similar to that imposed upon a common carrier, and in support of this view directs our attention to numerous authorities: Louis Pizitz Dry Goods Co. v. Yeldell (1925) 213 Ala. 222, 104 So. 526; Sweeden v. Atkinson Imp. Co. (1910) 93 Ark. 397, 125 S. W. 439, 27 L. R. A. (N. S.) 124; McKeon v. Lissner (1928) 87 Cal. App. 371, 262 P. 459; Shellaberger v. Fisher (C. C. A. 1906) 143 F. 937, 5 L. R. A. (N. S.) 250; Southern Ry. Co. v. Taylor (1926) 57 App. D. C. 21, 16 F. (2d) 517; Munsey v. Webb, 37 App. D. C. 185, affirmed 231 U. S. 150, 34 S. Ct. 44, 58 L. Ed. 162; Mitchell v. Marker (C. C. A.) 62 F. 139, 25 L. R. A. 33; Byrd v. Atlanta National Bank, 16 Ga. App. 7, 84 S. E. 219; Steiskal v. Marshall Field & Co. (1909) 238 Ill. 92, 87 N. E. 117; Fraser v. Harper House Co., 141 Ill. App. 390; Beidler v. Branshaw, 200 Ill. App. 425, 65 N. E. 1086; Siegel, Cooper & Co. v. Trcka, 218 Ill. 559, 75 N. E. 1053, 2 L. R. A. (N. S.) 647, 109 Am. St. Rep. 302; Tippecanoe L. & T. Co. v. Jester (1913) 180 Ind. 357, 101 N. E. 915, L. R. A. 1915E, 721; Monahan v. Equitable Life Ins. Co. (Iowa 1916) 156 N. W. 994; Kentucky Hotel Co. v. Camp, 97 Ky. 424, 30 S. W. 1010; Ross v. Sisters of Charity (1917) 141 La. 601, 75 So. 425, L. R. A. 1917F, 260; Belvedere Bldg. Co. v. Bryan (1906) 103 Md. 514, 64 A. 44; Goodsell v. Taylor, 41 Minn. 207, 42 N. W. 873, 4 L. R. A. 673, 16 Am. St. Rep. 700; Roberts v. Schaper Stores Co. (1928) 318 Mo. 1190, 3 S. W. (2d) 241; Goldsmith v. Holland Bldg. Co., 182 Mo. 597, 81 S. W. 1112; Lee v. Publishers: Knapp & Co., 155 Mo. 610, 56 S. W. 458; Dailey v. Sovereign Camp (1921) 106 Neb. 767, 184 N. W. 920; Quimby v. Bee Bldg. Co., 87 Neb. 193, 127 N. W. 118, 138 Am. St. Rep. 477; Smith v. Odd Fellows Bldg.

Ass'n (1922) 46 Nev. 48, 205 P. 796, 23 A. L. R. 38; Lander v. Hornbeck (1919) 74 Okla. 239, 179 P. 21; Putnam v. Pacific Monthly Co. (1913) 68 Or. 36, 130 P. 986, 136 P. 835, 45 L. R. A. (N. S.) 338, L. R. A. 1915F, 782, Ann. Cas. 1915C, 256; Strobel v. Park (1928) 292 Pa. 200, 140 A. 877, 57 A. L. R. 253; Sou. Bldg. & Loan Ass'n v. Lawson (1896) 97 Tenn. 367, 37 S. W. 86, 87, 56 Am. St. Rep. 804; City National Bank v. Pigott (Tex. Civ. App. 1925) 270 S. W. 234; Murphy's Hotel v. Cuddy's Adm'r (1919) 124 Va. 207, 97 S. E. 794; Getty v. Hutton (1920) 110 Wash. 124, 188 P. 10; Kranzusch v. Trustee Co. (1916) 93 Wash. 629, 161 P. 492; Dibbert v. Metropolitan Inv. Co. (1914) 158 Wis. 69, 147 N. W. 3, 148 N. W. 1095, L. R. A. 1915D, 305, Ann. Cas. 1916E, 924.

We are also told that, by its decision in Ross v. Sisters of Charity, 141 La. 601, 75 So. 425, L. R. A. 1917F, 260, our Supreme Court has placed Louisiana among those states in which the liability of a building owner, whose building contains elevators, is, with reference to the operation, maintenance, and equipment of the elevators, bound to exercise the highest degree of care commensurate with the character and mode of conveyance.

Counsel for exceptors, on the other hand, seek to ·persuade us that no such extreme care should be required of an owner of property merely because his property contains an elevator; that although his building does contain such a mechanical contrivance, nevertheless he remains merely an owner of property and his duty is fully complied with if he uses reasonable care in the maintenance, equipment, and operation of his elevator, and we are told that the following authorities, equally prominent, support this view: Griffen v. Manice, 166 N. Y. 188, 59 N. E. 925, 928, 52 L. R. A. 922, 82 Am. St. Rep. 630; Hubener v. Heide, 62 App. Div. 368, 70 N. Y. S. 1115;

Seaver v. Bradley, 179 Mass. 329, 60 N. E. 795, 88 Am. St. Rep. 384; Draper v. Cotting et al., 231 Mass. 51, 120 N. E. 365; Hill v. Winsor, 118 Mass. 251; Getty v. Hutton, 110 Wash. 124, 188 P. 10; Burgess v. Stowe, 134 Mich. 204, 96 N. W. 29.

A perusal of the many cases to which we have been referred shows that there are undoubtedly two well-defined views of the measure of duty owed to tenants and to the public by owners of buildings containing elevators. According to one view, as we have said, the duty is of the same high degree as that owed by a common carrier, which duty, as stated in Julien v. Captain & Owners of Steamer Wade Hampton, 27 La. Ann. 377, is as follows:

" 'Common carriers are bound to carry their passengers safely and securely, and to use the utmost care and .skill in the performance of their duties.' Angell on Carriers, p. 568. 'And, of course, they are responsible for any, even the slightest, neglect.' 2 Greenleaf Ev. 221. 'The burden of proof is on the defendants to establish that there has been no disregard whatever of their duties, and that the damage has resulted from a cause which human care and foresight could not prevent.' "

The other view—and this one counsel for exceptors contend is the sound one— is that the duty is as expressed in the opinion in Griffen v. Manice, supra:

"I think sufficient security is afforded the public when owners or occupants of a building are required to use reasonable care in the character of the appliance they provide, and in its maintenance and operation."

Whatever may be the measure of duty properly to be required of an owner and operator of building elevators, whether it be to use the highest care or to use only reasonable care we find ourselves unable to determine whether gates such as are demanded by plaintiff have come into such general use, or have proven themselves of

sufficient benefit to warrant us in saying that either standard of care would demand their installation.

Our inability in this regard results from the fact that the matter is now before us on exceptions of no cause of action and that, hence, we have before us no evidence to assist in arriving at a conclusion with regard to how universal is the use of such gates, nor as to whether, among the well-informed in such matters, it is agreed that such gates afford sufficient additional protection to justify their presence, even if the elevator owner be held only bound to furnish reasonably safe and adequate equipment.

Our own observation, to some extent, keeps us informed as to what changes and improvements are being constantly brought about in every day life and in commonplace machinery with which we are constantly coming into contact; but it would be going too far to ask us to take judicial notice of the fact that such equipment as it is suggested should have been installed either is or is not in general use, or is or is not considered necessary, and we find ourselves unable to determine without the assistance of evidence, whether even reasonable prudence requires the adoption of such doors as are here demanded.

The fact that plaintiff has alleged that the elevator owner must exercise the highest degree of care, being a conclusion of law, does not, even on consideration of an exception of no cause of action, make it incumbent upon us to acept as correct that legal proposition, but the allegation that defendant has failed "to equip said elevator car with the protection and modern equipment with which present day elevators should be equipped" makes it necessary that we be informed on the subject of the usual equipment of modern elevators and with regard to the equipment of the elevator in question. We therefore feel that in view of the allegations of the petition which, so far as they charge facts, must be accepted as true, the exception is not well founded and should have been overruled.

Counsel for exceptors urge us to pass on all contentions raised by the exceptions, and they suggest that, even if we come to the conclusion that a cause of action is present under the allegations of the petition with regard to the absence of the inside door—to which conclusion we have come—still, if we believe that the allegations with reference to the charge that the operator was negligent in throwing the lighted box of matches, even if true, do not set forth a state of facts under which liability on that ground could be fixed upon the defendants, then we should maintain the exception in so far as that charge of negligence is concerned.

There has been called to our attention no authority which would justify us in taking such action. Since, on one charge of negligence a cause of action seems to be stated in the petition, we feel that the entire case should be sent to the district court for trial. Legier v. Braughn, 123 La. 463, 49 So. 22; Bank v. Bank, 50 La. Ann. 528, 24 So. 14. The district court may then exclude such evidence as may seem to it to support charges which would not justify recovery, even if true.

The judgment appealed from is annulled, avoided, and reversed, the exceptions of no cause of action are overruled, and the matter is remanded to the civil district court for the parish of Orleans for further proceedings according to law and not inconsistent with the views herein expressed, costs of this appeal to be borne by appellee; all other costs to await final judgment.

JANVIER, J., concurs in the decree.