(104 So. 707)

No. 26949.

## GLOBE & RUTGERS FIRE INS. CO. OF NEW YORK v. STANDARD OIL CO. OF LOUISIANA.

(May 25, 1925.)

*(Syllabus by Editorial Staff.)*

Explosives &⇒7—Spilling gasoline while filling tank held not proximate cause of fire from lighted match.

Where defendant's agent, in delivering gasoline into underground tank, spilled a small quantity thereof, and another threw a lighted match in proximity to inlet pipe of tank at time gasoline was being poured into it, *held*, that act of defendant's agent, even if negligence, was only remote cause of resultant fire, and direct and proximate cause was throwing of lighted match, and hence defendant is not liable for loss caused by fire.

Appeal from Twenty-Sixth Judicial District Court, Parish of Washington; Prentiss B. Carter, Judge.

Action by the Globe & Rutgers Fire Insurance Company of New York against the Standard Oil Company of Louisiana. Judgment for plaintiff, and defendant appeals. Reversed, and ordered that plaintiff's demand be rejected.

Hunter C. Leake and Lemle, Moreno & Lemle, all of New Orleans, for appellant.

Miller & Miller and John C. Hollingsworth, all of New Orleans, for appellee.

ST. PAUL, J. Plaintiff sues as the subrogee of the Bogalusa Stores Company, under a certain fire insurance policy covering a certain store which was destroyed by fire; the loss being paid by plaintiff.

From a judgment against it, defendant appeals.

### I.

The case is thus stated in plaintiff's (appellee's) brief, viz.:

"The uncontradicted facts of this case are that the appellant's (defendant's) agent was delivering gasoline from a motor tank truck owned by the appellant at its last delivery of the evening, and having inserted the outlet pipe of that tank wagon into the inlet pipe of the underground tank of the Bogalusa Stores Company (which inlet pipe was about four feet distant from the gallery of the store of the Bogalusa Stores Company), and having started the gasoline to run out of the said motor tank truck through said outlet pipe into the underground tank, *did, while the gasoline was running, raise said pipe and permit the gasoline to run over the said inlet pipe and on the ground adjacent to the store building* of the Bogalusa Stores Company, and said agent of appellant permitted said spilled gasoline to remain on the ground in close proximity to the store, unprotected, and left the gasoline running into said tank, and went into the store of the Bogalusa Stores Company to have a receipt signed for the gasoline. (Italics ours.)

"Thereafter, a third party, unknown, threw a lighted match adjacent to the spilled gasoline, and the gasoline running from the outlet pipe of the tank, both then unprotected and unattended, and the gasoline ignited, spreading along the ground where the gasoline was spilled, to the store of the Bogalusa Stores Company, which was completely destroyed by fire, including the stock."

### II.

The case for plaintiff depends wholly on the uncorroborated testimony of a 12 year old boy to the effect that defendant's agent did, "while the gasoline was running (through the outlet pipe), raise said pipe and permit the gasoline to run over the said inlet pipe (of the underground tank), and onto the ground adjacent to the store building. * * *"

The testimony of this child does not impress us favorably. He tells a story of a man, whom he had never seen before or since the fire, who sent him into the store to get a match, and when the man got the match, he lit his pipe and threw the match into the gasoline; whereupon, seeing the fire catch, the man tried to put it out by beating it with his hat, and when this did not succeed the man ran away. All this occurred in the *less than two minutes* it took

defendant's agent to go into the store and get his receipt for the gasoline. The boy *did* go into the store and get a match; he says he did not know it would be dangerous to throw a match in gasoline, and he went home as soon as he saw the fire. No one else saw *the man*, at any time.

### III.

Be that as it may, defendant's agent testified that at no time did he raise the outlet pipe before going into the store to get the receipt, during which time it was that the fire started. He says that he did not go for his receipt until he knew by the sound thereof that the gasoline had about finished running. He testifies that he delivered the gasoline in the usual way, and admits that he spilled a little gasoline near the intake pipe. The boy testified that there was no gasoline running over the ground, "No, sir; not out of the hose; when he picked it up to look at it, it spattered a little bit.   *   *   * It spattered over the top, and he put it back down in there (the inlet to the tank)."

### IV.

Our conclusion is that plaintiff has not made out its case. We see no evidence of any negligence on the part of defendant's agent; for we recognize that large volumes of liquids (300 gallons here) cannot be handled without spilling small quantities thereof at times. And to convict a vendor of gasoline of negligence under such circumstances would amount to making him an insurer towards all against the dangerous properties of that fluid.

We do not mean to say that a handler of gasoline is not required to handle it with some care, and need not take precautions against spilling it around. Indeed, his own safety requires him to do so; but spilling small quantities thereof is unavoidable, and gasoline is an article of prime necessity today; so that the public is bound to share some small part of the risk of handling it, to wit, that part of the risk which is unavoidable.

### V.

The fact of the matter is that the direct and proximate cause of this fire was the throwing of the match in proximity to the inlet pipe of the underground tank, around which, when open, there was bound to be either gasoline or gasoline vapors, and the act of defendant's agent, even if we call it negligence, was only the remote cause thereof. For the foolhardy act of throwing a lighted match near the intake pipe of a gasoline tank at a time when gasoline was being poured into it *was not to be anticipated.*

"The question is not whether it was a possible consequence, but whether it was probable, that is, likely to occur, according to the usual experience of mankind. That this is the true test of responsibility applicable to a case like this has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so.   *   *   *" Stone v. Boston & Albany R. R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794, and authorities there cited.

#### Decree.

The judgment appealed from is therefore reversed, and it is now ordered that plaintiff's demand be rejected at its cost in both courts.

O'NIELL, C. J., absent.