LAND, J.
 

 This suit was brought against defendant in the district court for Jefferson parish by Mrs. May B. Moore, as tutrix for her minor child, Olive May Moore, for damages in the sum of $35,000 for the alleged negligent killing of Lucas E. Moore, the late father of the minor and husband of the plaintiff.
 

 From a judgment in favor of defendant, plaintiff appealed to the Court of Appeal for the Parish of Orleans. The judgment of the
 
 *1159
 
 lower court was reversed, and judgment was rendered in favor of plaintiff, as tutrix of the minor, in the sum of $10,000, with legal interest from judicial demand. This judgment is now before us for review, under a writ of certiorari issued to the Court of Appeal.
 

 Lucas E. Moore, at the time of his death, was vice president of the Lucas E. Moore Stave Company.
 

 During the month of January, 1925, the Moore Stave Company agreed with the Mar-land Refining Company, acting for the Northwestern Supply Company, to receive at the Moore Company's plant at or near Southport in Jefferson parish 500 steel drums, to fill the drums with gasoline, and to deliver same to shipside in New Orleans, as ordered by the Northwestern Supply Company.
 

 In the early part of February, 1925, the Marland Refining Company entered into an agreement with Edwin J. Putzell to purchase for the purposes above mentioned 500 steel drums, which, Putzell represented, had never been used.
 

 The defendant, the Jefferson Distilling & Denaturing Company, sold these drums to Putzell, f. o. b. cars at its plant. The drums were there inspected and accepted by the purchaser, and on February 11, 1925, were shipped, in the name of and by the direction of the purchaser, to the Lucas E. Mopre Stave Company at Southport, in the parish of Jefferson.
 

 While the drums were being unloaded from box cars at the plant of the Moore. Stave Company, a sound was detected," as if caused by some gritty substance contained in the drums. Mr. Moore’s attention was called to this fact by an employee of the Moore Stave Company, who had concluded from the incident that the drums had been used. A further investigation ensued, during which a drum was opened and found to contain a dark, gritty deposit, which colored the gasoline when mixed with the deposit in a test tube. Mr. Putzell was present and was advised as to the condition of this particular drum, which rendered it unfit as a container of gasoline, and, after examining a number of drums, one was found which, he insisted, was free from any sediment and had not been used. This drum was separated from the rest, and, when the bung was removed, a gaseous vapor was emitted. Mr. Moore and Mr. Putzell both applied their noses to the bunghole and also looked into the drum. Mr. Moore contended that he had discovered a liquid in the drum, but Mr. Putzell disagreed with him.
 

 In order to settle the question, an employee was sent for an electric light with which to examine the interior of the drum. Before the employee could return, Mr. Putzell suddenly drew some matches from his pocket, and applied a lighted match to the bunghole of the drum. A loud explosion instantly followed, blew out the head of the drum nearest to Mr. Moore, striking him with- great violence, and inflicting severe injuries from which he died.
 

 Plaintiff’s right to recover in this case is predicated: First, upon the assumption that Mr. Putzell acted as the agent of an undisclosed principal, and that the defendant, the Jefferson Distilling & Denaturing Company, was that principal; and, secondly, upon the alleged negligence of the defendant company in placing upon the market unlabeled steel drums, which had contained alcohol, an explosive substance.
 

 1. The first ground, that Mr. Putzell acted as the agent of defendant company in
 
 *1161
 
 the sale of the drums to the Marland Refining Company, is not sustained by the evidence in the case. As shown by the evidence, Mr. Putzell is a merchant in the city of New Orleans, and is engaged in the business of retailing steel drums.
 

 The company he represented in the city of New Orleans, at the time of the accident, was the Draper Manufacturing Company of Cleveland, the largest producer of steel drums in the United States. The evidence shows that Mr. Putzell purchased the drums delivered to the Moore Stave Company on an order from the Marland Refining Company, and that these drums were invoiced to him and were shipped in his name to the plant of the Moore Stave Company.
 

 2. We have no difficulty in arriving at the conclusion that the drums sold by defendant company to Putzell and delivered by him to the Moore Stave Company included some drums that had been used.
 

 That this was due to the casual inspection of these drums at the warehouse of defendant company is made plain by the testimony of A. M. Smythe, who represented the Moore Stave Company in this inspection. Defendant company also had a representative present. This witness testified that only a certain percentage of the drums that defendant said were to be shipped were looked into here and there in the pile; that only the bungs of this percentage were removed, and a flashlight put into the bungholes; and that only these drums were found to be clean and in fit condition to carry gasoline. In other words, all of the 500 drums to be shipped were not inspected. As shown by the evidence, these drums were stocked on the bilges in the warehouse of defendant company in pyramidal piles five feet high.
 

 3. This brings us to 'the consideration of the Questions whether defendant was guilty of negligence in placing upon the market these drums, without any labels warning the purchaser that they had contained alcohol; and whether defendant’s negligence, if any, was the proximate cause of the explosion that resulted in the death of Lucas E. Moore.
 

 In the opinion of the Court of Appeal it is stated: “To ship drums containing explosive and inflammatory gases in place of new or unused drums, whether done, as suggested by counsel for plaintiff, deliberately, or, as seems to us more probable, inadvertently, was an act of negligence, for the reasonably expected consequences of which defendant is liable to third persons.”
 

 Able counsel for defendant company complain that the Court of Appeal erred in predicating its opinion upon the breach of the contract in this case.
 

 There was, in fact, no contractual relationship of any kind existing between defendant and decedent, or between defendant and decedent’s company. Defendant made a contract with Putzell to sell and deliver a quantity of steel drums. After this contract had been made, Putzell in turn made a contract to sell the same .drums to the Marland Refining Company at a price which presumably netted him. a profit. The Marland Refining Company employed the Lucas B. Moore Stave Company to fill the drums with gasoline, and it was only through this employment that decedent came into the contact with the drums. As there was no privity of contract, a breach of the contract cannot be taken advantage of by plaintiff. Standard Oil Co. v. Murray (C. C. A.) 119 F. 572.
 

 The Jefferson Distilling & Denaturing Company did not manufacture the drums,
 
 *1163
 
 and
 
 hence
 
 its duty and consequent liability are to be gauged by the fact that it was a mere vendor of the article.
 

 We are dealing here with a ease in which privity of contract is absent. If recovery is had by plaintiff, it must be predicated upon the basis of a dutyúmposed by law.
 

 In Standard Oil Co. v. Murray (C. C. A.) 119 F. 572, 575, the court said:
 

 “The acceptance by a vendee of a thing sold, except under special circumstances, relieves the vendor from liability to a stranger for an injury resulting to him from the negligent manufacture or construction of the thing sold. Bragdon v. Perkins-Campbell Co., 30 C. C. A. 567, 87 F. 109 [66 L. R. A. 924]; Necker v. Harvey, 49 Mich. 517, 14 N. W. 503.
 

 “The duty owing to the public, for breach of which one injured may recover, has respect to and is limited
 
 to instruments and articles in their nature calculated to do injury, such as are essentially and m their elements instruments of danger, and to aots that are ordinarily dangerous to life and property.
 
 If the wrongful act be not imminently dangerous to life or property, the negligent vendor is liable only to the party with whom he contracted. McCaffrey v. Manufacturing Co., [23 R. I. 381] 50 A. 651, 55 L. R. A. 822 [91 Am. St. Rep. 637].
 
 Petroleum oil,
 
 as we held in Goodlander Mill Co. v. Standard Oil Co. [(C. C. A.) 63 F. 400, 27 L. R. A. 583], supra, and in Railway Co. v. Ballentine, 28 C. C. A. 572, 84 F. 935,
 
 is not a dangerous agency within the rule that he who uses it does so at his peril. It is dangerous only when in considerable quantities it is brought into contact with fire. That is a fact of common Imowlcdge, with which every one is chargeable.”
 

 See also Fidelity & Casualty Co. v. Paraffine Paint Co., 188 Cal. 184, 204 P. 1076; Stone v. Van Noy R. News Co., 153 Ky. 240, 154 S. W. 1092; Glaser v. Seitz, 35 Misc. Rep. 341, 71 N. Y. S. 942.
 

 We fail to find any proof in the record in this case that the drum that exploded with fatal result to decedent
 
 was “intrinsically or inherently dangerous”
 
 to life or limb.
 

 These 500 drums had been removed from the warehouse of defendant company. They had been placed in box cars, and transported to the plant of the Moore Stave Company. A number of drums had been unloaded at the plant, and the bungs had been removed, including the drum that exploded, without any accident whatever. It was only when Putzell recklessly applied a lighted match to the bunghole and ignited the escaping gas that injury resulted to Moore. Manifestly, a thing cannot be said to be
 
 “imminently dangerous to human life”
 
 merely because it can be made to explode by a person who throws care and caution aside, and acts, as alleged by plaintiff, “in wanton disregard of consequences.” Plaintiff made no effort to show that anything less than the actual insertion of a match in the bunghole could have caused the drum to explode.
 

 4. The decedent, Moore, had been vice president of the Moore Stave Company for a number of years. The company operated an oil barreling plant, and, at the time of the accident, was prepared to fill these 500 drums with gasoline. Putzell, himself, had been for years in' th.e business of retailing steel drums, and represented, at the date of the accident, the largest producer of steel drums in the United States. The Moore Stave Company kept at the plant an electric outfit that was used for looking into the bungholes of barrels, an “electric light with a sort of protection on it.”
 

 
 *1165
 
 The assistant superintendent of the Moore stave plant testified that when decedent looked into the drum he said: “I see
 
 a liquid.
 
 He then turned the drum facing so that we could get a good light from the sun, and I looked in the drum myself, and I could see
 
 a liquid
 
 in the bottom of the bilge, about an inch and a half high in the center of the drum.”
 

 It was then that the superintendent of the oil barreling plant ordered that the electric light be brought to examine the drum.
 

 This witness also testified that when the bung was removed from the drum “a gaseous vapor or pressure came from the drum”; that he smelled it; that the other persons present “had their faces near enough to smell it, if they cared to”; that it had “the same .odor as some of the other drums we had there”; and that “he did not know whether it was alcohol, benzene, or benzol, but it was a very peculiar smell.”
 

 This witness further testified that Mr. Put-zell stated before the explosion that: “It was possible that some of the drums were mixed, that some of the drums were used in the alcohol works for the storage of alcohol.”
 

 A. M. Smythe, expert witness for plaintiff, who examined the drums with a flash-light after the accident, testified that there were probably a half dozen, and that he found a distinct odor of alcohol in the bungtioles. This witness further testified that it would be “positively dangerous to examine with a lighted match a bunghole that had previously contained alcohol”; that it is dangerous to insert a lighted match in any container that has gas in it; that a drum that had previously contained alcohol would have gas in it, if the bung was tight; and that it was a matter of common knowledge that “it is absolutely dangerous to use a lighted match in any place, alcohol distillery or oil plant”
 

 Moore, Putzell, and the superintendent and the assistant superintendent of the Moore Stave Company were not novices in the examination of drums. Had they been, the electric light would not have been sent for. The danger was apparent, as shown by the atmosphere of the ease, and especially by the statement of the assistant superintendent:
 

 “If we had had any idea that this man was going to do that, we would have jumped on him or run, one of the two.
 

 “Q. Why didn’t you? A. We didn’t have time.”
 

 Plaintiff does not attribute the act of Put-zell in applying the match to the bunghole to any ignorance of the danger of the situation, but alleges in the petition that:
 

 “A man was sent for an electric light so that the interior of the drum
 
 could be safely and fully
 
 examined.
 

 “Whereupon, before the man had time to return, said Putzell in an endeavor to show that the drum had never been used and should be accepted by the Moore company,
 
 negligently, reelolessly, and in wanton disregard of the consequences, applied a lighted match to the bunghole.”
 

 In the face of these facts, it is immaterial that the drums were not labeled, as the parties concerned had knowledge of the situation and were warned of the danger.
 

 5. It is also stated in the opinion of the Court of Appeal that: “Putzell’s act, in striking the match, was without any knowledge of the danger involved, and therefore not sufficient to break the causal relation between the negligence of the defendant and the injury of decedent.”
 

 
 *1167
 
 The mere fact that Putzell was guilty of an act that might have resulted in injury to himself is _not a persuasive argument as to his ignorance of the danger, nor is it sufficient to except him from the common knowledge of mankind as to the peril involved in applying a lighted match to barrels or receptacles containing explosive substances or ga ses. Nor can Putzell confidently rely upon the inspection made of these drums at the plant of the defendant company, as that examination was far from being thorough. In fact, it was of the most casual character, although Putzell was present at the distillery when the drums were examined.
 

 Before the accident, a liquid had been found in the death drum; a gaseous vapor was escaping from its bunghole; and the air was redolent of alcohol. Putzell had even put his nose to the bunghole. A sediment also had been located in other drums, and, before the fatal explosion, Putzell himself had declared his belief that some of the drums had been containers of alcohol while at the distillery of defendant company. Others present were aware of the impending danger. An electric torch had been sent for to safely continue the examination of the interior of the drum that exploded.
 

 Besides, Putzell was a veteran dealer in steel drums. Under these conditions, defendant company cannot be justly mulcted in damages. Putzell cannot be permitted to plead ignorance of the probable consequences of his action, in the face of facts sufficient in themselves to warn any reasonable man of the danger at hand. His reckless conduct in applying-the lighted match to the bunghole of the drum was clearly the proximate cause of the accident, as he must be held, under the facts of the case, to have known the danger involved.
 

 In Globe & Rutgers Fire Insurance Co. v. Standard Oil Co., 158 La. 763, 104 So. 707, 708, it was charged that an employee of the defendant had negligently permitted gasoline to run upon the ground adjacent to a store building, and that thereafter a third person had thrown a lighted match upon the gasoline causing a fire which spread to the store building and completely destroyed it and its contents.
 

 Upon the question of proximate cause this court said:
 

 “The fact of the matter is that the direct and proximate cause of this fire was the throwing of the match in proximity to the inlet pipe of the underground tank, around which, when open, there was bound to be either gasoline or gasoline vapors, and the act of defendant’s agent, even if we call it negligence, was only the remote cause thereof.
 
 For the foolhardy aot of throwing a lighted match neoA' the intalce pipe of a gasoline tañía at a time when gasoline was being poured into it was not to be anticipated.
 

 “ ‘The question is not whether it was a possible consequence, but whether it was probable, that is, likely to occur, according to the usual experience of mankind. That this is the true test of responsibility applicable to a case like this has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, * * * but only for a consequence which is probable, according to ordinary and usual experience.
 
 One is bound to
 
 * * *
 
 provide against what usually happens and what is Ulcely to happen; but it would impose too heavy a respoiisibility to hold him bound in lilce manner to guard against what is unusual and unlilcely to happen, or what, as it is sometimes said, is only remotely and slightly
 
 
 *1169
 

 probable.
 
 A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so. * * * ’ Stone v. Boston & Albany R. R. Co., 171 Mass. 536, 51 N. E. 1, 41 L. R. A. 794, and authorities there cited.” (Italics ours.)
 

 The casual and careless throwing of a match is an act much more usual, and hence to be expected, than is the deliberate applying of a lighted match to the bunghole of a steel drum, in an endeavor to show that the drum had never been used. Plaintiff has alleged and proved that the very thing that Put-zell was trying to ascertain by his inspection was whether or not the drum had been used for the storage of alcohol; and according to Smythe, plaintiff’s own witness, the inspection of a barrel for any purpose with an open flame is a foolhardy thing to do. Much more is this true when the person making the in-pection had every reason to believe that the drum had been used for the storage of alcohol.
 

 Defendant company’s negligence in not having a thorough inspection made by its representative, and in not properly labeling the drums, if such omission may possibly be deemed negligence under the facts of this case, was a remote rather than a proximate cause of the accident, and hence does not give rise to a cause of action in favor of plaintiff.
 

 It is therefore ordered that the judgment of the Court of Appeal for the Parish of Orleans be annulled and reversed.
 

 It is now ordered that the judgment of the Twenty-Eighth judicial district court, rejecting plaintiff’s demand and dismissing plaintiff’s suit, be reinstated and affirmed.