LOTTINGER, Judge.
This is a suit sounding in tort for the death of Andrew Williams. The petitioner is the widow of decedent, Leola Lazard Williams, who sues individually and as natural tutrix of the minor children, Lee Anna Williams, Jane Marie Williams and Edward Charles Williams. The defendants are Billups Petroleum Company, E. P. Tillson and American Mutual Liability Insurance Company. The lower Court awarded judgment in favor of petitioner and against defendants jointly and severally, the defendants have appealed, and an answer to said appeal has been filed by petitioner in which she seeks an increase in the amount of judgment.
The facts, which are not substantially in dispute, disclose that on Saturday, November 2, 1957, at about 7:30 o’clock A.M., defendant, E. P. Tillson, who was employed by Billups Petroleum Company was engaged in his duty of transferring gasoline from a storage tank to a service tank at the gasoline station operated by his employer situated on Landry Street in Opelousas, Louisiana. While transferring the gasoline, Tillson entered the office of the station to write out a ticket for a customer and upon returning to the outside of the station noticed that the service tank had become full and that gasoline was running over from the intake pipe. The intake pipe was situated in a gravelled section which was located some three feet from the paved slab of the filling station. Upon noticing the gas being spilled, Tillson immediately turned off the valve and commenced to wash the paved apron clean by using a water hose. The record is not clear as to approximately how many gallons of gasoline spilled, however, the-evidence discloses that Tillson washed the apron so as to clear it of gasoline for a period of approximately thirty minutes during which time he directed the gasoline to a storm sewer drain which is situated in front of the station. Although Tillson testified that he knew not what happened to the gasoline after he washed it into the storm sewer, the evidence reflects that the sewer drains into the eastern culvert of Bayou Rawls, which runs generally in a northerly and southerly direction along the western boundary of the Billups Gasoline Station grounds. The evidence further reflects that the distance from the sewer intake into which the gasoline was washed to the outlet which enters into the eastern culvert under Bayou Rawls is a distance of one hundred feet, the drain sloping downward as it approaches Bayou Rawls so as to permit the water to drain out of the culvert.
Bayou Rawls is one of the main drainage arteries for the City of Opelousas. As it passes under St. Landry Street, the Bayou enters two concrete culverts of approximately six feet square each. The record reflects that the western culvert takes care of the normal drainage. The eastern culvert was obstructed by dirt, boulders and other waste material so as to form a sort of dam on both the northern and southern edges of this eastern culvert. Under normal conditions, because of the debris, water would stand under the eastern culvert to a depth of approximately ten inches, which would become stagnant. The testimony reflects, however, that, on the morning in question, there was some slight flow in a northerly direction from the eastern culvert.
The normal flow of water in Bayou Rawls is in a northerly direction, the testimony reflects that the eastern culvert had not been cleaned out for some great length of time prior to the date in question, but that the City officials did not feel cleaning was necessary because the western culvert took care of the ordinary flow of the water *547 and the condition of the eastern culvert was sufficient to do its part in handling the overflow whenever necessary.
In washing the gasoline from the apron in front of the filling station, the gasoline, together with the wash water, entered the drain in front of the Billups Station and drained westward a distance of one hundred feet into the eastern culvert of Bayou Rawls. The testimony reflects that, because of the condition of the eastern culvert, the gasoline and water entering said culvert did not drain out into the Bayou, at least a substantial amount of this mixture remained blocked under the eastern side of the culvert.
Shortly after 8:00 o’clock on this same morning, a crew from the City of Opelousas appeared on the scene to clean out the culverts running under St. Landry Street. For some few days prior to this date they had been cleaning and cutting weeds along Bayou Rawls some distance south of the scene in question.
The evidence reflects that decedent, Andrew Williams, and a fellow employee were working within the eastern culvert when evidently the other employee struck a match to light a cigarette. A violent explosion and fire occurred in which both Williams and his fellow employee, Boutte, were killed.
Suit was filed by the widow, individually, and for and on behalf of her three minor children, for damages resulting from the death of her husband. The lower Court awarded judgment in the amount of $25,646 for petitioner plus $8,000 for each of the three minor children, said judgment being rendered jointly and severally against the three defendants. The defendants have appealed, and petitioner has filed an answer to the appeal.
The lower Court held that, while there was no direct evidence as to the amount of gasoline which spilled and was washed into Bayou Rawls, the evidence of the experts indicated that there was a substantial amount spilled. The Court also was of the opinion that defendant Tillson should have taken more precautions than he did in the disposition of the spilled gasoline, and held that his negligence was responsible for the death of Andrew Williams.
The defendant has cited several cases in support of its defense to the effect that either defendant Tillson was not guilty of any negligence which was a proximate cause of the accident, or, even though he was guilty of some act of negligence, he could not reasonably foresee the chain of events which led to the death of Andrew Williams. The defendants cite Globe & Rutgers Fire Insurance Company v. Stand-, ard Oil Company of Louisiana, 158 La. 763, 104 So. 707, wherein the defendant’s agent was delivering gasoline from a tank truck into an underground storage tank, the intake pipe on the storage tank being situated approximately four feet from a store building. During the process, the defendant allowed some small amount of gasoline to run on the ground. The agent then went into the store building to have a receipt signed for the gasoline. It is contended that while the agent was in the building, an unknown third party threw a lighted match on the spilled gasoline which caused a fire which consumed the store building. The Court held that petitioner had failed to prove its case, holding that a small amount of gasoline spilled under such circumstances did not constitute negligence on the part of the agent, as large volumes of liquids cannot be handled without spilling small quantities thereof at times. The Court held that the foolhardy act of throwing a lighted match near the intake pipe, at a time that gasoline was being poured into it, could not be anticipated by the agent and judgment was rendered accordingly. We believe that the said case is distinguishable from the one presently before us in that the evidence indicates that only a very small quantity of gasoline was spilled, and certainly the agent could not foresee the extreme negligence of some third party in almost immediately there *548 after throwing a lighted match into the spilled gasoline. Under such circumstances, the spilling of the gasoline was merely a remote cause of the subsequent damage.
Defendant also cites New Orleans and N. E. R. Company v. McEwen and Murray, 49 La.Ann. 1184, 22 So. 675, 38 L.R.A. 134. In said case the petitioner sued for damages which occurred to a revetment which it had constructed along the banks of Lake Pontchartrain in order to protect its railway tracks. The defendant, engaged in transporting logs, tied these logs together in the form of rafts. One night while the logs were being transported, a storm suddenly arose causing them to break away from the boats towing them, and although some of the logs were recovered by the defendant, it was unable to secure all of them. Later, a violent storm arose, and some of these logs were banging into the revetment and caused damage thereto.
The Court relieved the defendant from liability charging that the omission or commission on its part was not the proximate cause of the damage. Of course, in this case we have intervening acts of God, i. e. the storms, and we do not believe that the evidence presented in that case indicated that the defendant could reasonably foresee the chain of events which subsequently led to the destruction of the revetment.
Defendant further cites Moore v. Jefferson Distilling and Denaturing Company, 169 La. 1156, 126 So. 691, 695. In that case the defendant had sold steel drums to a man by the name of Putzell who, in turn, sold said drums to Marland Refining Company. Although the drums were supposedly new, a question arose as to whether or not they had been used. In inspecting the said drums Putzell negligently applied a lighted match to the bunghole of one of the drums which exploded causing the death of Moore. In that case the Court held that the deliberate throwing of a lighted match into the drum was the proximate cause of the death of Moore, as the parties knew, or suspected, that the drum had been used to store alcohol. In that case the Court said that “The casual and careless throwing of a match is an act much more usual, and hence to be expected, than is the deliberate applying of a lighted match to the bunghole of a steel drum, in an endeavor to show that the drum had never been used.” It appears that the more recent case entitled Fontenot v. Magnolia Petroleum Company, 227 La. 866, 80 So.2d 845 would be controlling of the issues with which we are presently concerned. Although the actual situation is not similar to the one presently before us, we feel that the jurisprudence therein set forth will apply to the present case. In the Fontenot case the defendant had exploded approximately ten pounds of dynamite in conducting seizmographic operations at a distance of some 1,000 feet from petitioner’s home. Shortly thereafter the petitioner noticed damages to his home, which were allegedly caused by the explosion and filed his suit for damages. The Court rendered a judgment in favor of petitioner and held that even though the defendant applied reasonable care in accordance with modem and accepted methods in causing the explosion, it was, nonetheless liable for the resultant damages to the nearby home of petitioner. It appears that that decision applied the doctrine of absolute liability without fault in a case which we feel is parallel to the one before us. However, we do not feel that it is necessary to apply this doctrine in the present situation, as the record reveals that Tillson was guilty of such a degree of negligence as to render his employer liable in tort, under Article 2315 of the LSA-Civil Code.
Article 2315 provides, in part, that “every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it * * * ”. Although it is of common knowledge, the record contains testimony as to the highly explosive nature of gasoline fumes, as well as the highly inflammable nature of the gasoline itself. It is assumed by the consequences which followed the spilling of the gasoline, *549 that a substantial amount of the liquid was spilled by Tillson and washed into the storm drainage. This is shown by the fact that it took approximately one half hour to wash the gasoline into the drainage intake as well as by the fact that the explosion as well as the resulting fire was of a violent nature. Although the gasoline was a great fire hazard when spilled, by washing it into the drainage system, which consisted of culverts, it appears that the gasoline was rendered more dangerous. By entrapping it in the culverts, fumes would accumulate, which would result in the possibility of an explosion as well as a fire. Although the evidence indicates that the explosion was caused by the lighting of a match by Louis Boutte, this explosion could very well have resulted from a spark caused by one of the employees scraping his shovel against the concrete culvert.
The defendants attempt to place liability on the negligence of Boutte in striking the match as well as on the City of Opelousas because of the situation in which the water could not flow from the culvert under St. Landry Street. Of course, the City of Opelousas could not foresee that a substantial amount of gasoline would be spilled in this culvert. As to the claimed negligence of Boutte, the record discloses that there were several gasoline stations situated adjacent to the scene of the accident, and although the other more fortunate employees smelled gasoline upon commencing their morning work, they testified that they thought the smell was coming from one or more of the gasoline stations.
In Volume 65, C.J.S. Negligence § 111, page 697, we find the following:
“It is sometimes laid down that the test of whether an intervening cause will relieve a wrongdoer of liability is whether he might reasonably have anticipated such intervening cause as a natural and probable consequence of his own negligence in the light of the attendant circumstances. If the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury, whereas, if the intervening agency was of such a nature that it could not reasonably have been anticipated, such agency, rather than the original negligent act becomes the proximate cause, even though the injury would not have occurred except for the original negligence. While it is not necessary, m order to preserve the chain of causa^ tion from the original negligence, that the precise nature of the second negligent act should reasonably have been anticipated, it is necessary that some such negligence should have been anticipated as reasonably likely to follow as a natural and ordinary consequence of the situation created by the original negligent act.” (Italics ours.)
In Vol. 65 C.J.S. Verbo Negligence § 112, page 701, we find the following:
“ * * * but a person who has caused a dangerous instrumentality to be placed in a position where it may effect injurious results to others is answerable for such injuries as may ensue in the ordinary course of events even though an intervening cause serves as a condition on which the dangerous instrumentality may have acted to effect the injuries.”
In American Jurisprudence Vol. 38, Verbo Negligence, Sec. 70, page 726, we find the following:
“The rule that the causal connection between a person’s negligence and an injury is broken by the intervention of a new, independent, and efficient intervening cause so that the negligence is not actionable, is subject to the qualification that if an intervening cause was foreseen or reasonably might have been foreseen by the wirongdoer, his negligence may be considered the proximate cause of an injury, and he may be held liable, notwithstanding the inter *550 vening cause. The intervention of independent intervening causes will not break causal connection if the intervention of such forces was itself probable or foreseeable.”
See also Jackson v. Jones, 224 La. 403, 69 So.2d 729.
Applying the above rule, which is the majority rule, to the present actual situation would render the defendants liable for the negligence of Tillson. We feel that Tillson was guilty of negligence which commenced a chain reaction which resulted in the death of Williams. Certainly, in washing the gasoline into the storm sewer, a reasonable person could foresee an explosion or fire. We agree with the decision rendered by the lower Court and its judgment will be maintained.
As to quantum, the lower Court awarded Mrs. Williams the sum of $25,646, and awarded the sum of $8,000 for the use and benefit of each of the three minor children. The sum awarded Mrs. Williams included loss of support, mental pain and suffering, loss of love and affection, as well as funeral expenses. The lower Court further awarded judgment in favor of Marquette Casualty Company, an inter-venor in the suit, for reimbursement of compensation payments made to petitioner and for funeral expenses, as well as $350 as attorney fees on behalf of Marquette Casualty Company. We feel that the above awards were reasonable and they will be affirmed.
For the foregoing reasons, the judgment of the lower Court is affirmed, all costs of this appeal to be paid by defendants.
Judgment affirmed.