McBRIDE, Judge.
On December 18, 1961, at approximately 11:40 p. m., under unusual circumstances, an accident occurred at about the center of the Greater New Orleans-Mississippi River Bridge which spans the Mississippi River at New Orleans. For some unexplained reason, five strands of rope dangled from the upper part of the bridge superstructure and at the ends of the rope strands was attached a large metal pulley. The high wind then prevailing caused the pulley to swing in pendulum fashion across the two westbound traffic lanes or, as some testimony reflects, the ropes rotated with a sort of •circular or “swirling” motion. At any rate, whenever the pulley reached the bottom of its arc, it would strike the paved surface •of the roadway of the bridge, causing sparks to fly as a result of the contact.
The accident involved a collision between two automobiles which were negotiating a westward passage of the bridge. One, a 1958 Oldsmobile, was being driven by Henry G. Hunter; at Camp Street on the New Orleans side Otto Veazey drove his 1956 Chevrolet, with his wife as a passenger, upon the bridge ramp. According to Veazey, when he emerged from the ramp onto the bridge, Hunter’s vehicle was “about 200 feet ■or better” ahead of his automobile. The two vehicles maintained their relative positions for at least 1,000 feet as each traveled about 35 miles per hour. Veazey testified his automobile never “gained on” Hunter’s car until Hunter slowed down near the scene of the accident.
When Hunter’s car reached a point under or near the superstructure, he discerned what he thought was a shadow “flashing out in the light,” this being, of course, the •dangling ropes with the pulley at the end. Hunter could not “tell what it was” so he slackened the speed of his vehicle. Upon nearing the object which had attracted his attention, he saw the ropes, so he further reduced his speed and then glancing into the rearview mirror, he observed Veazey’s car bearing down on him “and the next thing I know I was hit.”
Veazey also noticed the shadows (meaning the ropes) ahead and thought perhaps it was a live wire making the sparks fly, and as he approached closer, he conceived the notion that the bridge was collapsing. He admits he did not know what to do and did nothing. To quote from his testimony:
“ * * * I didn’t know if I should go left, right, stop, speed or what. The last thing I actually remember when I seen all these shadows, I said, Oh Lord, and the next thing I knew I had hit Mr. Hunter’s car.”
Both automobiles were damaged and Hunter and Mrs. Veazey sustained physical injuries. This litigation ensued. Hunter, by original and amended and supplemental petitions, seeks direct recovery from the liability insurer of the Mississippi River Bridge Authority and Veazey, in solido, for property damage, medical expenses and physical injuries; the Bridge Authority is charged with negligence in that its bridge was in an unsafe condition due to the presence of the swinging ropes and pulley. Veazey is alleged to have been negligent in that he failed to have his automobile under control, was following the Hunter vehicle too closely, failed to stop, and failed to go around instead of running into the Hunter vehicle.
After answering denying negligence on the part of the Bridge Authority, the insurer called Veazey as its third party defendant and prayed for a judgment against him in the amount of any judgment which Hunter might recover against the insurer. The third party proceedings allege that Veazey was negligent in allowing his attention to be diverted from road conditions and in failing to have his car under control. *590 Veazey answered both Hunter’s claim and the third party demand denying- negligence on his part; Veazey and Mrs. Veazey then filed reconventional demands, the former claiming of the insurer the expenses of repairing his automobile and medical expenses incurred because of his wife’s injuries; Mrs. Veazey seeks damages for her physical injuries against the insurer. Both recon-venors allege that the Bridge Authority was negligent in permitting the rope and pulley to swing across the traffic lanes creating the hazard which caused the accident.
After a trial below, judgment was rendered in favor of Hunter and against Veazey for $1,023.79 ($523.79 for property damages plus expenses and $500 for personal injuries) and all other demands were dismissed. Hunter and Mr. and Mrs. Veazey appealed.
It is obvious Veazey was confronted with an emergency, the propensities of which he greatly overestimated. Although under the delusion dire things were about to happen, his obligation to use ordinary care such as would be expected of any reasonable motorist was not dispensed with. The mere fact that a motorist finds himself in an emergency does not automatically relieve him of that obligation. The amount of care might change, of course, but the degree or standard of ordinary care is always the same — that is, the care that would be used by an ordinarily prudent person under the same circumstances, the emergency itself always being considered and weighed as one of the circumstances. 7 Am.Jur.2d § 359, p. 905.
The test of his negligence poses the question: Did Veazey act as a reasonably prudent man? Hunter in the lead car was exposed to just as much danger and cause to be frightened; yet Hunter had the presence of mind to slacken his speed so as to avert contact with the swinging ropes. We think the actions of Hunter may be taken as the best yardstick to measure what would constitute reasonable care. His actions and reactions were those of a normal person, while, on the other hand, Veazey became rattled, frightened and even terror stricken and did nothing to extricate himself or to spare injurious results to others. The concept of ordinary care' would dictate that Veazey make some effort to avoid an accident, and it is impossible to reconcile his course of conduct with prudence; it appears quite certain he could have stopped his automobile had he been vigilant and observed that Hunter had slackened his speed because there was a distance of “200 feet or better” between the two automobiles which, by reference to standard speed and stopping charts, is ample distance within which a motor vehicle traveling at 35 miles per hour can be braked to a stop. Perhaps other courses were open to Veazey to avoid crashing into Hunter’s car, such as swerving to the right or left. Nothing in the record shows that he could not have done either.
The duty of the driver of a motor vehicle to be on the alert and to act prudently is unceasing. Negligent conduct may not be excused because the motorist becomes unduly panicky or uses judgment not compatible with common sense. We agree with the pertinent remarks made by the Supreme Court of Massachusetts in Massie v. Barker, 224 Mass. 420, 113 N.E. 199:
“The law does not require supernatural poise or self-control. But no one safely can drive motor vehicles amid the distractions and dangers likely to be encountered on the modern highway and street who is not reasonably steady of nerve, quick in forming an opinion and calm in executing a design. * * ”
Veazey is clearly liable for Hunter’s damages.
We do not feel it necessary to decide the question of negligence in the employees of the Mississippi River Bridge Authority. Even assuming negligence on their part; then such was remote and cannot be said to have been a proximate cause of the colli *591 sion between the two vehicles and is not actionable. No accident, in all likelihood, would have happened but for Veazey’s intervening negligence which was the sole and proximate cause of the accident.
In 65 C.J.S. Negligence § 111, p. 685 appears the following:
“ * * * An intervening cause will be regarded as the proximate cause, and the first cause as too remote, where the chain of events is so broken that they become independent and the result cannot be said to be the natural and probable consequence of the primary cause, or one which ought to have been anticipated. The law will not look back from the injurious consequences beyond the last efficient cause, especially where an intelligent and responsible human being has intervened.”
In Lee v. Powell Bros. & Sanders Co., Limited, 126 La. 51, 52 So. 214, the Supreme Court said:
“For severing the legal connection between the negligence by which such an imminent danger was created and the injury that has resulted from it the intervening voluntary act of some person responsible for his acts would have to be shown. * * * ”
In Mire v. East Louisiana R. Co., 42 La.Ann. 385, 7 So. 473, we find the principle stated as follows:
“In case the proof shows that the accident would not, in all likelihood, have happened, but for the interposition of some independent responsible third party between the servant’s negligence and the injury sustained, and it affects the result, and is the immediate cause of the injury, the plaintiff cannot recover against the original wrongdoer.” (Syllabus.)
See, also, Moore v. Jefferson Distilling & Denaturing Co., 169 La. 1156, 126 So. 691; Petrich v. New Orleans City Park Improvement Ass’n, La.App., 188 So. 199.
The following language appears in Kendall v. New Orleans Public Service, Inc., La.App., 45 So.2d 541:
“The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, without which the result would not have occurred. Williams v. Pelican Creamery Co., La.App., 30 So. 2d 574; Cavaretta v. Universal Film Exchange, La.App., 182 So. 135; Moore v. Jefferson Distilling, etc. Co., 169 La. 1156, 126 So. 691;”
It is argued on behalf of Hunter that the damages he recovered for personal injuries are inadequate and should be increased. Hunter was first seen by Dr. Kist-ler who found that the patient suffered muscle pain in the1 left shoulder secondary to trauma, but what treatment was given Hunter by Dr. Kistler is not shown. On January 10, 1962, Hunter was taken in charge by Dr. Nick J. Accardo, whose opinion was that the ■ patient had suffered an aggravation of a pre-existing osteoarthritis involving the cervical spine and that conservative treatment in the form of traction and diathermy should be administered. From Hunter’s testimony he was treated by Dr. Accardo on twelve occasions. On February 14, 1962, Dr. Accardo discharged the patient and the doctor’s final report states that his response was very satisfactory with no evidence of any residual disability and no need for further treatment. Hunter lost no time from his work. The trial judge awarded $500 for personal injuries which we think somewhat inadequate, our opinion being that in view of Hunter’s pain and suffering and the rigors of the course of treatment, the award should be raised to $1,000.
For the reasons assigned, the judgment appealed from is amended so as to increase Hunter’s judgment to $1,523.79, and as thus amended and in all other respects the judg *592 ment is affirmed; Veazey is cast for the costs of Hunter’s appeal.
Amended and affirmed.
REGAN, J., dissents with written reasons.